# Brice's Appeal.

1. Where one who is a stranger to an obligation pays the debt in whole or in part, in the absence of evidence to the contrary, he becomes by implication the purchaser of the debt to the extent of his payment.

2. Where a debt is secured and a stranger voluntarily pays the same, it is prima facie a purchase of the debt and the accompanying security, and is determined by the manifest intention and understanding of the parties at the time.

3. F. becoming in default on a bond secured by a mortgage given for his indebtedness, B. voluntarily paid several instalments of interest and a portion of the principal, it being verbally understood that he was to be reimbursed out of the mortgage. F. afterwards made an assignment to B. for the benefit of creditors, and a scire facias having issued on the mortgage, a judgment was recovered for the full amount of principal and interest from the time when F. first defaulted. B., as assignee, paid to the mortgagee the balance actually due to him, and in his account as assignee credited himself with the full amount of the judgment and costs. G., a judgment-creditor, excepted to that portion which B. had voluntarily paid before the assignment. *Held*, that evidence of the verbal understanding was sufficient proof of the purchase of the mortgage by B., to the extent of his payments, and no written transfer was necessary to create in him said interest therein. There is no reason why a partial interest could not be thus acquired by a partial payment, in the same manner as an entire interest by an entire payment.

4. The fund arising from the sale of real estate by the assignee amounted to S16,535. *Held*, that in the absence of any especial trouble, two and one-half per cent. commissions were properly allowed.

June 11th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Northumberland county*: Of May Term 1879, No. 95.

Appeal of A. N. Brice, assignee for the creditors of John W. Friling, from the decree of the court on exceptions to his account and to the report of the auditor thereon.

On January 4th 1877 John W. Friling and wife made an assignment for the benefit of creditors to said appellant, Brice. On the 14th of November 1877 said assignee presented a petition to the court for an order of sale of the real estate of Friling, divested of liens. By virtue of the order this real estate was sold for $16,535, and on June 17th 1878 the assignee filed his account of the proceeds of the sale. W. I. Greenough, a judgment-creditor of Friling, who had obtained his judgment previous to the assignment, excepted to the following items of the account:

"Cash to Mary Smith for mortgage on farm as confirmed by court, $5109.10.

\* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \*

"Percentage due to accountant as assignee, $16,535, at four per cent., including time, trouble, &c., $661.40."

The account was referred to an auditor, T. H. Purdy, Esq.,

14 NORRIS—10

Before him, in regard to the first item, the following testimony was given: Mortgage of John W. Friling to Mary Smith, dated January 1st 1874, for $4000, and record of judgment of Mary Smith against John W. Friling in the Common Pleas of Northumberland county, August Term 1877, obtained upon the scire facias issued sur this mortgage.

George W. Zeigler then testified: "I was attorney for Mary Smith to collect this judgment from J. W. Friling. The money was paid to her and she entered satisfaction on the judgment and mortgage. The full amount was not paid to her. My impression is that there was $4106 paid when I took the judgment. I took it for face of the mortgage and the interest, $4093.33. I knew there was not that much due, but could not get the amount, and so I took judgment for the full amount of debt and interest. When she entered satisfaction she got the whole amount that was due to her at that time; she did not claim the balance of the judgment. Mr. Brice, at that time, exhibited receipts for money that he had individually paid, which reduced the judgment to $4106. I don't know whose money Brice used. Mr. Brice is a son-in-law of J. W. Friling."

Brice, the assignee, testified: "In the mortgage to Mrs. Smith of $4106 I had paid her that much in satisfaction of the judgment entered on said mortgage. I had made advances to make up the difference between this sum and the credit in my account of $5109.10. When the first payment came due of the interest on $4000, which was $240, Mrs. Smith demanded her interest of Mr. Friling. He could not raise it and she came to me. I raised her the $240 and paid her. On January 21st 1875, I paid her $100. On January 25th 1875, I paid her $137.75. These two payments, including $2.25 for corn furnished by J. W. Friling, made up the $240. H. Y. Friling owed me for other matters, and the $2.25 was put into that account. Mrs. Smith gave notice that she wanted at least $200 on the principal by the 1st of April 1875. Mr. Friling did not have it to spare. I gave her on or about the 1st of April 1875 $100. On the 7th of April 1875 I gave her my check for $89.08 on account of the principal of the mortgage. There was a lumber bill of Friling, Bowen & Engle of $10.92, which was due by Mrs. Smith to them, which was counted in a settlement I had with Friling, making up the sum of $200 on the principal of the mortgage. The next payment Friling failed to pay; it came due in January 1876. Mrs. Smith came to me and said she would push the mortgage if she did not get the interest. I made a calculation of the interest due on the 2d of September 1876, and it amounted to $269.18 on that day. I drew my check in her favor for that amount, on account of interest on the mortgage, up to that date. I am mistaken as to the time up to which the interest was calculated. It was calculated up to March 1st

[Brice's Appeal.]

1876, although I paid her after that $150 in checks and money, to wit, April 6th 1877, check for $25; April 26th 1877, check for $25; another check dated November 19th 1877 for $50. The balance of the $150 being $50, was in money at different dates; I cannot state exactly when." (The above checks offered in evidence.)

Witness being asked how he was to be secured for the several advancements above mentioned, answered: "I was to be repaid out of the mortgage. They were simply advancements on the mortgage. These payments were out of my own individual fund; I was not reimbursed in any other way by Mr. Friling. I paid these several sums to Mrs. Smith at my office. She did not threaten so much, but talked of issuing it if she did not get her money. I did not pay money to Mrs. Smith for Mr. Friling, on any other account than the mortgage. I did not take from Mrs. Smith a written transfer of any part of the bond and mortgage of J. W. Friling to her, for any of these payments. She did not assign to me any part of the said bond and mortgage as security for these payments. I had no arrangement with J. W. Friling for this security. He knew that I was to be secured in this way. It was a verbal understanding; there was nothing written. * * * Mrs. Smith asked me how I wanted to be secured for the payment of this money. I replied I was to be secured out of the mortgage. She said 'very well, then, I don't want to see you lose the money advanced.' Mr. Friling said something like that in her presence. He had no security then to give. This conversation took place at one of the two payments at which he was present."

Relative to this credit for the amount paid on the mortgage the auditor reported: The auditor is therefore of the opinion and finds from the evidence, that the accountant, A. N. Brice, was not in any position of compulsion to make these advances, but that they were voluntary advances of money upon the credit of and for the purpose of assisting Mr. Friling, and that there was no transfer of any portion of said mortgage, such as would entitle him to claim any part of the fund arising from the sale of the farm. * * * This item of the account must then be so corrected as to strike therefrom the amount of money claimed as a credit for advancements made in behalf of Mr. Friling before the date of the deed of assignment; and to give said assignee credit for the amount of money actually paid by him in that behalf as assignee after the assignment was made; and as the evidence shows that the sum of $709.18 was so advanced before the date of the deed of assignment, that amount must be stricken from the credit side of the account, leaving the actual credit in this item $4399.92, instead of $5109.10."

As to the second item excepted to he reported: "The auditor finds no strict rule of law to govern the compensation of trustees

[Brice's Appeal.]

or assignees. All depends upon the amount of vexation, time and trouble bestowed or incident to the settlement of the estate. The percentage does seem to be large, but as no evidence was produced to show how much time and trouble was bestowed, and as the estate seems to have been a troublesome one, the auditor does not feel at liberty to reduce it."

Brice excepted to the finding of the auditor as to the first item, and Greenough as to the second item. The court, Elwell, P. J. (holding a special court), dismissed the exceptions filed by Brice, and sustained those filed by Greenough " as to one and a half per cent. commission on $16,535," and in other respects confirmed the report. Brice then took this appeal, and alleged that the court erred in this action.

*S. P. Wolverton*, for appellant.—The auditor struck from the credit side of the account $709.18, as having been advanced prior to the assignment, thereby reducing the judgment that amount. There is no question about Brice having paid this money, intending that the mortgage should remain as a security for such advancements in good faith. There is no intimation of any fraud or collusion in obtaining the judgment for the full amount $4903.33. The judgment having been obtained adversely, it is submitted that the auditor had no power to open the judgment and make the deduction. This was, in effect, inquiry into the validity of the judgment in a collateral proceeding: Appeal of Second National Bank of Titusville, 4 Norris 528. Not only had the auditor no power to open the judgment, but no issue would have been ordered by the court, as there was no allegation of fraud or collusion. But why should the advancements made by Brice before the assignment be treated as payments on the mortgage, and not entitled to its lien to protect such advancements? What obligations were there on the part of Brice to pay anything on account of either the principal or interest of this mortgage? If there had been any obligation to pay, it might be construed to be an extinguishment of the debt to the amount of the payment, but as there was not, there is a presumption that it was a purchase, and that he did it on the strength of the security of the mortgages: Lithcap *v.* Wilt, 4 Phila. R. 64; Wilson *v.* Murphy, 1 Id. 106; McCall *v.* Lennox, 9 S. & R. 304; Weston's Lessee *v.* Mowlin, 2 Burr. 969; Wentz *v.* DeHaven, 1 S. & R. 367; Johnson *v.* Hall, 3 Johns. Cas. 329; Ricket et al. *v.* Maderia, 1 Rawle 328; 1 Hilliard on Mortgages 243, 253.

*Joshua W. Comly*, for appellee.

Mr. Justice GREEN delivered the opinion of the court, October 4th 1880.

[Brice's Appeal.]

We think the first assignment of error is sustained. It appears upon the face of the auditor's report and by the testimony returned with it, that certain moneys, amounting in the aggregate to $709.18, had been paid by the assignee prior to the assignment directly to Mary Smith, the holder of the mortgage against Friling, the assignor. Other payments were made by the assignee after the assignment, in full discharge of the judgment on the mortgage, and for these credit was allowed to the assignee. But the payments made before the assignment were not allowed. The auditor seems to have been influenced mainly by the consideration that there was no written transfer of any portion of the mortgage by Mrs. Smith to Brice, and that there was a transfer of other assets to Brice by Friling to secure him for the payments made to Mary Smith on her mortgage, and against certain liabilities he had incurred for Friling. He does not state whether anything was realized by Brice from the transfer of the book account that could or would be applicable to the repayment of the moneys paid on the mortgage. In the absence of any testimony or finding to that effect, it is fair to presume that Brice obtained no indemnity from that source. On the question whether there was any agreement or understanding by which Brice was to be secured for such payments, there was testimony which does not appear to have been contradicted in any manner. A. N. Brice testified as follows: "I had made advances to make up the difference between this sum ($4106) and the credit in my account of $5109.10." Mr. Wolverton asks Mr. Brice how he was to be secured for these several advancements. Answer: "I was to be repaid out of the mortgage. They were simply advancements on the mortgage. These payments were not of my own individual fund. I was not reimbursed in any other way by Mr. Friling. * * * I had no arrangement with J. W. Friling for this security. He knew that I was to be secured in this way. It was a verbal understanding; there was nothing written. * * * Mrs. Smith asked me how I wanted to be secured for the payment of this money. I replied I was to be secured out of the mortgage. She said ' very well, then, I don't want to see you lose the money advanced.' Mr. Friling said something like that in her presence. He had no security then to give."

This testimony was in no way contradicted or impeached, and is therefore to be accepted as true. The conclusion of the auditor was not a finding of fact adverse to the testimony, but a conclusion of law, holding it to be insufficient to create any interest in the mortgage or the debt secured thereby. In that conclusion, as well as in the opinion of the court to the same effect, we think there was error. There was no pretence of any kind of fraud or collusion on the part of Mr. Brice in making the payments or in taking credit for them in his account. On the contrary, the argument is that he did not take sufficient care of his interests by procuring a

written transfer of a part of the mortgage corresponding with his payments. If a writing were necessary in order to create in him an interest in the mortgage, the decision of the auditor and court below would . be right. But it has been frequently held that a written transfer is not necessary to accomplish that result. In Lithcap *v.* Wilt, 4 Phila. 64, it was held that "the essential difference between the purchase of a debt and the payment of it, depends upon the intention of the parties at the time; but the payment by a stranger to the obligation, of the debt, or by one whose liability was secondary, is prima facie a purchase." In Wilson *v.* Murphy, 1 Phila. R. 106, the court say, "There is no doubt that a mortgage may be kept alive even after payment in full, if such was the intention of the parties, and even though there be no actual assignment to a trustee. Equity will consider that as done which was agreed to be done, and not suffer the trust to fail for want of a trustee." In McCall *v.* Lennox, 9 S. & R. 304, Tilghman, C. J., says: "An assignment of the debt carries with it the benefit of the mortgage, although the mortgage be not specifically assigned. From the moment the debt is assigned the mortgagee becomes the trustee of the assignee." In the same case Gibson, J., said: "Chancery will order a security to be assigned in favor of a surety who has paid it." And Duncan, J., said: "Whatever will give the money will carry the estate in the land along with it. The estate in the land is the same thing as the money due upon it. * * * The assignment of the debt or forgiving it will draw the land after it as a consequence. It would do it though the debt were only given by parol: Weston's Lessee *v.* Mowlin, 2 Burr. 969." And again, "the debt being paid or in any other manner extinguished, the mortgagee becomes a trustee for the mortgagor." In Johnson *v.* Hall, 3 Johns. Cas. 329, Kent, J., said: "When the note to secure which the mortgage was given was negotiated, the interest in the mortgage, which was given for no other purpose than to secure that note, passed of course. It required no writing, no assignment on the back of the mortgage." * * * "Whoever was owner of the debt was likewise owner of the security." In Rickert *v.* Madeira, 1 Rawle 328, Rogers, J., says: "Whatever will give the money secured by the mortgage will carry the mortgaged premises along with it. The forgiving the debt, although by parol, will draw the land after it as a consequence."

It has been many times decided that a mortgage may be transferred by parol, and that when given to secure notes payable .to bearer, the holder is the equitable owner of the mortgage. Whoever pays the debt for the mortgagor is the equitable owner of the mortgage. See 1 Hilliard on Mortgages 243, 253.

We think the authorities cited show that when one who is a stranger to the obligation pays the debt in whole or in part, in the absence of evidence to the contrary, he becomes by implication a

purchaser of the debt to the extent of his payment. In the present case Brice was an entire stranger to the debt due by Friling to Mrs. Smith. He was under no kind of obligation to pay it. There is no affirmative testimony that when he made the payments he thereby intended to extinguish the indebtedness to that extent. This lack of testimony would alone qualify him to be regarded as a purchaser. But the case is stronger than that. The testimony already quoted, contradicted by no one, shows that he at least intended to be secured by the mortgage given to secure the debt upon which the payments were made. When he testified, "I was to be repaid out of the mortgage. They were simply advancements on the mortgage;" and "Mrs. Smith asked me how I wanted to be secured for the payment of this money, I replied I was to be secured out of the mortgage. She said 'very well, then, I don't want to see you lose the money advanced,'" a clear case of concurrent assent is made out between Brice and the mortgagee to treat the payments as the acquisition of an interest, and not as on absolute extinguishment. Certainly if he had paid the entire debt he would have become the equitable owner of the mortgage, and could have compelled its transfer to himself. We see no reason why a partial interest could not be acquired by a partial payment in the same manner as an entire interest by an entire payment. In equitable contemplation it is the fact of payment which creates the interest, and this controlling fact has the same effect in principle whether the payment be partial or entire. When Mrs. Smith brought suit on her mortgage she claimed, and took judgment for, the whole amount of the mortgage and interest, without any deduction for the payments made by Brice. This was in apparent conformity with the understanding testified to by Brice, and adds strength to the other affirmative testimony on that subject. She was then the legal owner of the mortgage and judgment to the extent of the amount remaining due to her, and the trustee for Brice as to the amount paid by him. This being so, Brice was entitled to credit for the whole amount of the judgment and interest paid by him, and the auditor and court below were in error in rejecting the credit for $709.18 paid prior to the assignment.

As to the second error assigned, we do not, in view of all the circumstances of the case, see any sufficient reason for interfering with the action of the court below in regard to the compensation of the accountant, and this assignment is not sustained.

Decree reversed and record remitted, with direction to the court below to allow the accountant credit for the full sum of five thousand one hundred and nine dollars and ten cents ($5109.10) paid to Mary Smith at the same time and in the same manner as appears in the original account of the assignee, the costs of this appeal to be paid by the appellees.