MRS. MARY F. HARRISON *v.* WILLIE F. HARRISON *et al.**

(*Nashville.* December Term, 1923.)

SUBROGATION. Right accorded to widow paying one of vendor's lien notes on homestead under agreement with note holder.

A widow, administratrix of her deceased husband, who, with insurance on his life, belonging to her individually, but ignorantly and inadvertently deposited by her to her account as administratrix, paid one of the vendor's lien notes on the homestead, *held* entitled by subrogation to share with the holder of the other notes in the proceeds of sale on foreclosure of the lien, the intention having been not to extinguish but to keep alive the debt, she having made the payment on the assurance of the holder of the notes that she would be protected from loss by reason of the fact that she would have a claim on the land, and she, by reason of having homestead and dower rights to preserve, not being a mere volunteer.

Cases cited and approved: Walker v. Walker, 138 Tenn., 679; Milam v. Milam, 138 Tenn., 686; Morrow v. U. S. Mortgage Co., 96 Ind., 21; Brice's Appeal, 95 Pa., 145; Loeb v. Fleming, 15 Ill. App., 503; Springer v. Foster, 27 Ind. App., 15; Stuckman v. Roose, 147 Ind., 402; Owen v. Cook, 3 Tenn. Ch., 78; Knaffl v. Banking & Trust Co., 133 Tenn., 655; Society of Shakers at Pleasant Hill v. Watson, 15 C. C. A., 632; Schermerhorn v. Gardenier, 107 App. Div. 564; Dufur Oil Co. v. Enos, 59 Or., 528; Garrison v. Vermont Mills, 154 N. C., 1; Connolly v. Bouck, 98 C. C. A., 184.

*On right of one paying stranger's debt to be subrogated to the rights of the creditor, see notes in 23 L. R. A., 124 and 16 L. R. A. (N. S.), 233.

On payment of entire claim of third person as condition of subrogation, see note in 9 A. L. R., 1596.

Harrison v. Harrison.

Cases cited and distinguished: Motley v. Harris, 69 Tenn., 577; Cottrell's Appeal, 23 Pa., 294; Hurley v. Atchison, etc., R. Co., 213 U. S., 126; Westall v. Wood, 212 Mass., 540.

FROM BEDFORD.

Appeal from the Chancery Court of Bedford County.—Hon. Thos. B. Lytle, Chancellor.

J. D. Murphree, for complainant.

Coldwell & Nance, for defendant.

Wm. P. Cooper, guardian *ad litem*.

Mr. Justice Chambliss delivered the opinion of the Court.

The complainant and administratrix filed this bill to administer in the chancery court the insolvent estate of her husband. The sole question on this appeal is the right of Mrs. Harrison to participate in the proceeds of a farm owned by her husband at his death, subject to a vendor's lien evidenced by five outstanding notes, aggregating $5,000 held by certain of the defendants.

It appears that Mr. Harrison had purchased this farm in 1919, paid $1,600 on the purchase price, and given these five notes, maturing January 1, 1920, and succeeding years. At his death in the fall of 1920 none of the notes had been paid, and he left no estate out of which they could be paid. His widow was appointed administratrix,

and collected $2,000 of insurance from the Woodmen of the World, which was her individual money, but which she ignorantly and, inadvertently deposited to her account, as administratrix, in bank. Thereupon, being called upon for the payment of this lien indebtedness against the farm on which she was at the time living, she paid from these personal funds the amount of one of these notes, and interest to January 1, 1921, on the others, the total thus paid being $1,525. In this proceeding the lien has been foreclosed and the land sold, realizing approximately $5,000, less certain deductions for expenses. Mrs. Harrison claims the right to participate in this fund thus realized from the sale upon the theories of subrogation and equitable lien, insisting that she was ignorant of business affairs and of the law as well, and in ignorance of her rights and liabilities paid this $1,525 to the holder of these notes; and, further, that she was induced to do so by the assurance of the holder that she would be protected from loss by reason of the fact that she would have a claim upon the land. The note was delivered to her marked paid, and Mr. Huffman, the officer of the bank, who transacted the business with her, says that he made no representations to her to the effect claimed by her, but Mrs. Harrison and her son, who went together to the bank, testify very positively in support of her insistence, and the chancellor has found with the complainant, and holds that she is entitled to be subrogated *pro tanto* to the rights of the original holders of the indebtedness and to share with them ratably in the distribution of the proceeds of sale. From this decree the holders of the remaining notes have appealed; the fund not being sufficient to pay in full all of the lien indebtedness, if Mrs. Harrison's claim be included.

For Mrs. Harrison it is contended that the allegations of her bill and her testimony and that of her son bring her claim within the doctrine of subrogation as stated in the opinion of Mr. Justice LANSDEN in *Walker* v. *Walker,* 138 Tenn., 679, 200 S. W., 825, and also within the equitable lien doctrine as set forth by Mr. Justice WILLIAMS in *Milam* v. *Milam,* 138 Tenn., 686, 200 S. W., 826.

It is insisted by defendant that Mrs. Harrison cannot successfully rely upon the doctrine of subrogation because (1) she was not personally bound on the indebtedness, and was a mere volunteer; (2) that she made the payment to save her home, and that her payment extinguished the debt; (3) that she did not discharge all of the lien; and (4) that she paid the debt as administratrix and not individually.

The case of *Motley* v. *Harris,* 1 Lea, 577, is relied on for defendants, that case holding—

"that the right and intention to keep alive the charge on the estate must both exist, and that when it was clear the payment was made with the purpose distinctly to discharge the estate from liability, and not to continue it, no right of substitution could afterwards be sustained."

This statement of the rule is not questioned, but in this case it is insisted for Mrs. Harrison that in making the payment she did not make it with the intention or understanding that the debt would be discharged and the land relieved from liability, but that on the contrary she was led to believe that the charge would be kept alive, and that in fact she acted under an agreement with the representative of the holder of the debt to this effect.

Conceding this state of facts, it is obvious that the case of *Motley* v. *Harris,* supra, is not controlling. The evi-

dence given by Mrs. Harrison and her son is disputed by Mr. Huffman, these three being the only witnesses testifying to what occurred when Mrs. Harrison made the payment to Mr. Huffman. While the proof is not so clear as it might be, the chancellor has found that Mrs. Harrison and her son have carried the burden of the proof, and we are of opinion that the record sustains him. Mrs. Harrison testifies postively that Mr. Huffman told her that if she paid the money, "the land would stand good for what I paid in; that I couldn't lose my money:" The son, James L. Harrison, who accompanied his mother to the bank, testifies that Mr. Huffman said:

"We are just merely transferring or changing hands with this note; that you cannot lose anything on the note; that the land would stand good for it."

He repeats this statement in substance, and insists that they were assured that the lien would continue on the land for the protection of his mother. The question, therefore, is as to the effect of a payment made under these conditions.

As stated by Mr. Justice LANSDEN in *Walker* v. *Walker,* supra:

"The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it."

In Cottrell's Appeal, 23 Pa., 294, the court said:

"Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract of privity of any kind exists between the parties. Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor."

These are general statements of the settled rule. In a note in 23 L. R. A., 124, citing many cases, the following statement is to be found:

"Generally where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of a creditor, such person will be so substituted."

It is insisted that Mrs. Harrison was a volunteer. The equitable remedy of subrogation is by no means confined to those personally bound on the obligation. Mr. Pomeroy divides those entitled to this relief into three classes:

"First, those who act in performance of a legal duty, arising either by express agreement or by operation of law; second, those who act under the necessity of self-protection; third, those who act at the request of the debtor, directly or indirectly, or upon invitation of the public, and whose payments are favored by public policy." Pomeroy's Eq. Rem. (2d Ed.) page 921.

The most conspicuous example of the first class is the surety, and it is to this class, for reasons quite obvious, that the rule requiring discharge of the whole debt more particularly applies, for otherwise the position and rights of the creditor would be impaired, and this equity would not permit. While this first class is, generally speaking, confined to those legally obligated, it is suggested by this learned authority that subrogation is permitted, even though the party making the payment were not really bound, if "it be made in performance of a supposed legal duty, and in good faith." But it is within the second class as given by Mr. Pomeroy, supra, that the case of Mrs. Harrison would seem more properly to fall. He says (Equitable Remedies, par. 921b):

"The second class of parties entitled to subrogation consists of those who, while not legally bound to pay, yet might suffer loss if the obligation is not discharged, and so pay the debt in self-protection. In this class are included subsequent incumbrancers paying off a prior incumbrance, and owners of property, or of equities or partial interests therein, paying off prior incumbrances. It would seem here, as in the first class of cases, that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect."

The foot note gives numerous illustrations, among others: "A legatee, devisee, or heir of property subject to claims of creditors" and a wife who has released her dower."

Under the subhead of "Equitable Assignment by Subrogation," the same author says:

"By means of the payment the mortgage is not satisfied, and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved, for his benefit and security. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the secureties themselves were not delivered over to the person making payment, and even though a receipt was given speaking of the mortgage as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a

particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part for his security and benefit."

Among other illustrations given in the note of those in whose favor such equitable assignment exists is, "The widow of the mortgagor."

Particularly applicable is this additional quotation from Mr. Justice LANSDEN (*Walker* v. *Walker,* supra) :

"It is well settled that one who pays a debt with no intention at the time of keeping it alive, or being subrogated to the rights of the creditors and as a volunteer, is not entitled to subrogation. This general statement, however, is subject to many modifications. In so far as it embodies the principle that courts of equity will not grant relief unless payment was made upon some well-recognized principle of equity, it will harmonize with most of the cases. It is probable that all that is meant by the general rule is that, if a volunteer pays the debt of a third party, although it is a lien upon property, *with the intention of extinguishing the debt,* and is not induced thereto by fraud, accident, or mistake, or by contract *with the payee,* he is not entitled to subrogation"—citing authorities. (The italics are ours.)

The appropriateness of the italicized words is obvious. As already found in the present case, there was not only no intention of extinguishing the debt, but a contract with

the payee is set up. It thus appears that the doctrine of subrogation, in one or more of its different phases, is applicable and may be invoked in the case at bar, unless the failure to discharge all of the debt is a determinative defense.

Formerly, the right of subrogation was limited to transactions between principles and sureties, and, doubtless, the rule generally laid down denying the right of subrogation, unless the whole debt is paid, grew out of the obviously inequitable result which would necessarily follow otherwise in this class of transactions. The reason of the rule is not clear when applied to a case like the one before us, even in the absence of any agreement with the holder of the indebtedness. However, the authorities clearly recognize an exception to this rule in cases of conventional subrogation, resulting from an agreement with the creditor that the security held by him shall be kept alive for the benefit of the person making the payment. In these cases it is no objection that the payment extends to a part only of the debt. This exception is stated in the note to be found in 9 A. L. R. 1607, and is well supported by authorities cited. *Morrow* v. *U. S. Mortgage Co.,* 96 Ind., 21; *Brice's Appeal,* 95 Pa., 145; *Loeb* v. *Fleming,* 15 Ill. App., 503; *Springer* v. *Foster,* 27 Ind. App., 15, 60 N. E., 720; *Stuckman* v. *Roose,* 147 Ind., 402, 46 N. E., 680.

This principle is recognized by Chancellor COOPER in *Owen* v. *Cook,* 3 Tenn., ch. 78, in which he decrees a *pro rata* division of the proceeds of a sale of land upon the theory of subrogation by contract. The case of *Knaffi* v. *Banking & Trust Co.,* 133 Tenn., 655, 182 S. W., 232, Ann.

149 Tenn.—39.

Cas., 1917C, 1181, while rightly decided on its facts, is not controlling here, since that was a suretyship subrogation, and not rested upon any agreement or waiver by the creditor. It would seem to follow that there is no legal obstacle to the application in this case of this doctrine.

Moreover, assuming a contract to be established, there is plausibility in the insistence that the doctrine of equitable lien as discussed and applied by Mr. Justice WILLIAMS in *Milam* v. *Milam,* supra, also has application here. This doctrine, says he, "in certain aspects, is not essentially different from that of the doctrine of subrogation, and, similarly, it is applied in cases where the law fails to give relief and justice would miscarry but for its declaration." And again:

"There must be an intent to make the particular property, real or personal, a security for the obligation; but, that intent being clear, equity will treat an agreement to give a mortgage or lien, as effective to create an equitable lien, where money has been parted with on faith that there would be a compliance. As Pomeroy says, one of the maxims underlying the doctrine is that equity regards as done that which ought to be done. *Hurley* v. *Atchison, etc., R. Co.,* 213 U. S., 126, 29 Sup. Ct., 466, 53 L. Ed., 729."

And he further quotes with approval the following:

" 'Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' 17 R. C. L., page 605; 3 Pomeroy, Eq. Jurisp. sections 1237, 1239; *Westall* v. *Wood,* 212 Mass., 540, 99 N. E., 325."

In the above-cited case of *Westall* v. *Wood,* the court says:

"An equitable lien does not of necessity rest exclusively upon an express agreement. It may arise from circumstances of such nature as to require the presumption upon general considerations of justice as between those conducting commercial transactions according to a reasonable standard of integrity that an equitable lien was meant. Equity looks at the substance, and not at the form. If the arrangement between the parties, interpreted in the light of the conditions in which they were placed, indicates a contemporaneous intention to adjust their rights upon a basis which can be established only by resort to the equitable principle of lien or pledge, then, in the absence of an intervening adversary interest, such an intent will be executed in chancery. *Hurley* v. *Atchison, Topeka & Santa Fé Railway,* 213 U. S., 126; *Society of Shakers at Pleasant Hill* v. *Watson,* 15 C. C. A., 632, 639, 68 Fed. Rep., 730; *Schermerhorn* v. *Gardenier,* 107 App. Div. (N. Y.), 564, affirmed 184 N. Y., 612; *Dufur Oil Co.* v. *Enos,* 59 Or., 528; *Garrison* v. *Vermont Mills,* 154 N. C., 1; *Connolly* v. *Bouck,* 98 C. C. A., 184, 174 Fed. Rep., 312."

We are of opinion that Mrs. Harrison, on the facts appearing, while not personally bound, was not a mere volunteer, being a widow with homestead and dower rights to preserve; that the intention was not to extinguish, but rather to keep alive the debt; that her payment was from funds which she might so appropriate; and that, even conceding that the general rule limiting the right of subrogation to payment of the whole debt might ordinarily

Harrison v. Harrison.

have application to a transaction of this class, to which the reason of the rule seems inapplicable, the circumstances, and particularly the agreement with the creditor proven, bring this case within the exception to this rule recognized by the authorities in cases of conventional subrogation. None of the cases cited from this or other courts are in conflict with this conclusion.

It results that the decree of the chancellor must be affirmed.