Filed Nov. 20, 1885.

---

No. 12,179.

## HANCOCK v. FLEMING ET AL.

VENDOR AND PURCHASER.—*Distinction Between Assuming and Taking Subject to Encumbrance.*—Where the purchaser of real estate assumes the payment of a mortgage thereon, he makes himself personally liable for the debt; but where he simply buys subject to the mortgage, he does not become so liable. In both cases, however, he takes the land charged with the debt.

Hancock v. Fleming et al.

SAME.— *Sheriff's Deed.*— *Merger.*— *Subrogation.*— *Mortgage.*— *Foreclosure.*—
*Equity.*—*Notice.*—Where one takes a deed to real estate subject to, but
without agreeing to pay, a mortgage thereon, and without actual notice
of any other encumbrance, he can not defeat the mortgage lien by ob-
taining a sheriff's deed under a sale on a prior judgment, as the title
thus taken merges in that previously held, although equity will keep
such judgment alive for his protection, and a foreclosure must be had
subject to it.

From the Grant Circuit Court.

*G. W. Harvey, H. D. Thompson* and *T. B. Orr,* for ap-
pellant.

MITCHELL, C. J.—This suit was brought to foreclose a
mortgage executed by Fleming and wife to Hancock.

All the questions presented for decision arise, as well
upon the special findings of the court, as upon the pleadings.
We will therefore consider only the special finding of facts,
and determine the correctness of the conclusions of law
stated thereon.

The facts found are briefly, that Jane Fleming, being the
owner of a tract of land in Grant county, and having exe-
cuted the mortgage in suit, joined in a warranty deed with
her husband, on July 16th, 1877, by which they conveyed
the land to Kelsey & Wood. The deed, otherwise in stat-
utory form, had in it a recital that the conveyance was sub-
ject to plaintiff's mortgage, specifying its amount at $225.
There was no assumption of payment by the purchasers.
At the time the conveyance was made, Fleming and wife
represented that the encumbrance recited was the only one
existing against the land, and the grantees had no actual no-
tice of any other. Prior to the date of plaintiff's mortgage
the land was owned by Smith, who while such owner suf-
fered a judgment to be taken against him for $341.03, in favor
of Forkner, Scott & Elmer. This was a lien prior to the
plaintiff's mortgage. After the deed to Kelsey & Wood, the
land was sold at sheriff's sale to satisfy an execution issued
on the judgment above mentioned. Kelsey & Wood, for the

purpose of protecting their title, purchased the land at the execution sale, and at the end of one year, no redemption having been made, Kelsey received a sheriff's deed. Wood disclaimed any interest in the land.

The conclusions of law stated by the court were, in substance, that as there was no agreement by Kelsey & Wood to pay the plaintiff's debt, and the mortgage securing it being subsequent to the Forkner, Scott & Elmer judgment, the title which Kelsey acquired under the sheriff's deed was paramount to the plaintiff's mortgage, and that the plaintiff was, therefore, not entitled to foreclose it against Kelsey, whose title it was found ought to be quieted. Whether the conclusions thus stated can be sustained depends upon the force attributable to the recital in the deed to Kelsey & Wood, and the relation into which they and the land purchased by them were brought to the plaintiff's mortgage.

It is argued that Kelsey & Wood became the principal debtors, and personally bound for the plaintiff's debt. This view of the case is not maintained. They were not personally liable. "The difference between the purchasers assuming the payment of the mortgage, and simply buying subject to the mortgage, is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability. In both cases he takes the land charged with the payment of the debt, and is not allowed to set up any defence to its validity." Jones Mort., section 736; *Atherton* v. *Toney,* 43 Ind. 211; Pomeroy Eq. Jur., section 1205. The land, nevertheless, remained the primary fund as between the purchaser and the mortgagee, out of which payment of the debt must be made.

The grantees having presumably retained the amount recited out of the purchase-price, they were estopped from disputing the validity of the mortgage, or that the amount of the debt was not the sum recited. Moreover, they could do nothing thereafter which would render the mortgage ineffectual as a valid lien upon the land as respects the right in

which they held it.    That they might have purchased a title paramount, without such title enuring to the benefit of the plaintiff's mortgage, may be conceded.    Jones Mort., section 739; *Knox* v. *Easton,* 38 Ala. 345.

But the title which Kelsey acquired through the medium of the sheriff's sale was not a title paramount in such sense. It was derived through the same source as that already acquired through the Flemings.    The rule is almost universal, that where two titles come together in the same person, from the same source, without any intervening estate, the one last acquired will merge in the first.    That acquired last will only be kept on foot to subserve some equitable purpose. Against the recital in the deed of Kelsey & Wood, equity will not prevent the merger of the title last acquired, and thus defeat the stipulation in their deed.

Upon this subject we said, in *Birke* v. *Abbott, ante,* p. 1: " Ordinarily, any person may acquire title to land through the medium of a sheriff's sale, but there may be cases in which the purchaser, from his relation to the land sold, or to the judgment upon which the sale is made, is precluded from acquiring title under such judgment or sale."

The recital in the deed to Kelsey & Wood put them in such relation to the land and the mortgage that they can not thus defeat the mortgage lien.

The purchase by Kelsey & Wood under the execution sale, while it was not effectual to invest them with title paramount, nevertheless worked an equitable assignment of the Forkner, Scott & Elmer judgment.

As they were under no personal covenant to pay either the judgment or the plaintiff's mortgage, equity will keep the judgment alive for their protection.

The distinction between this case and *Birke* v. *Abbott, supra,* is, that in the case cited the purchaser expressly assumed the payment of the prior encumbrances by a stipulation in his deed.    It was held that having purchased the land at sheriff's sale, made to satisfy the encumbrances assumed, he would

be treated as having paid them off. Having thus done nothing more than he had contracted to do, equity would not prevent the title thus acquired from merging, nor subrogate him to the lien which was discharged by payment.

In the case under consideration there was no agreement to pay. While equity will not, as against the stipulation in the deed to Kelsey & Wood, prevent the title from merging, it will, in the absence of an express assumption, preserve the lien of the judgment which they were compelled to pay, for their protection.

A standard author says: " When an owner of the premises who is not personally and primarily liable to pay the debt secured, pays off a mortgage or other charge upon it, he may keep the lien alive as a security for himself against other encumbrances or titles, and thus prevent a merger." Pomeroy Eq. Jur., section 798. Elston v. Castor, 101 Ind. 426.

Payment of the prior encumbrance having been made necessary to protect the prior title, the doctrine of subrogation applies.

In a case like this the principles which ruled Peet v. Beers, 4 Ind. 46, and Ayers v. Adams, 82 Ind. 109, are applicable. See, also, Spray v. Rodman, 43 Ind. 225; Sidener v. Pavey, 77 Ind. 241.

This conclusion requires Kelsey & Wood to give effect to the recital in their deed. It results in the violation of no agreement on their part, and does not put the appellant in any worse situation than he was in before.

There should have been a decree of foreclosure in favor of the appellant and for the amount of his debt, subject to the lien of the judgment.

As the special finding of facts is not sufficiently full to enable us to determine the amount of the several liens so as to order the proper judgment, the judgment rendered is reversed, with costs, and a new trial ordered.

Filed Nov. 19, 1885.