### Springer *v.* Foster.

[No. 3,763.   Filed May 28, 1901.]

CONTRIBUTION. — *Subsequent Purchaser of Portion of Mortgaged Premises.—Each Grantee Assuming the Entire Mortgage Indebtedness.*—The owner of a tract of land mortgaged the same to A for $10,000, and afterward conveyed a portion of the tract to B, who assumed the mortgage indebtedness, and at the same time conveyed the remaining portion of the tract to C, who also assumed the mortgage indebtedness. B subsequently conveyed by quitclaim deed to D his portion of said tract subject to said mortgage. There was a provision that the whole mortgage debt should become due on failure to pay any part of it when due. The mortgagor had executed interest notes for the mortgage indebtedness, and D, to protect himself from foreclosure of the mortgage on his portion of the tract of the mortgaged premises, paid the interest notes when due, and then brought suit to have himself subrogated to the rights of the mortgage as against C for the amount of the interest which he paid on said mortgage indebtedness, which he alleged should have been paid by C. *Held,* that since B and C each assumed the entire

mortgage debt, and each being primarily chargeable with the entire mortgage debt, there could be no contribution as between themselves, and consequently there can be no right of contribution as between C and the grantee of B.

From Jasper Circuit Court; *S. P. Thompson,* Judge.

Action by Warren Springer against Marietta Foster. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*F. Foltz, C. G. Spitler* and *H. R. Kurrie,* for appellant. *C. W. Hanley* and *J. J. Hunt,* for appellee.

BLACK, C. J.—In the complaint of the appellant, Warren Springer, against the appellee, Marietta Foster, a demurrer to which for want of facts was sustained, it was shown that one Joseph M. Kean, the owner of certain real estate described, being adjoining parcels aggregating 1,400 acres, in Jasper county, on the 13th of April, 1894, his wife joining, mortgaged said real estate to one Samuel H. Adams, to secure the payment of one note of said Joseph M. Kean to the mortgagee for $10,000, due five years after May 1, 1894, with interest at the rate of seven per cent., payable semiannually after the last mentioned date; that with the mortgage and the principal note Kean executed his ten interest notes, or coupons, each for $350, payable November 1, 1894, and each six months thereafter, with interest at the rate of eight per cent. after due, the mortgage being payable with attorney's fees, and it being stipulated in the mortgage that in case of any defalcation in any of the payments of principal or interest the whole amount secured might, at the option of the holders of the notes, become due and payable; that afterward Kean, the mortgagor, sold and conveyed all of said real estate covered by the mortgage, except a certain tract described of eighty acres, to John Foster, who assumed and agreed to pay said mortgage for $10,000 and interest thereon after May 1, 1895; that at the same time, date, and transaction when the conveyance to John Foster was made, Kean, the mortgagor, sold and conveyed the remaining

Springer *v.* Foster.

cighty acres of said mortgaged real estate to the appellee, who still owns the same; that in the deed of conveyance to the appellee she assumed and agreed to pay the whole of said mortgage for $10,000, with all interest accruing thereon after May 1, 1895; that the deeds to the Fosters, which together included the whole of the mortgaged real estate, were made, executed, and delivered by Kean, the mortgagor, at the same time and as one and the same transaction, to which Kean, the mortgagor, and the two Fosters were parties; that afterward, John Foster and the appellee, who was his wife, by their quitclaim deed dated September 1, 1896, which contained no covenants, the consideration therein expressed being $1, conveyed and quitclaimed to the appellant the real estate so conveyed by Kean to John Foster together with two parcels of forty acres each not included in the mortgage, but adjoining the mortgaged parcels conveyed to John Foster, the conveyance not including the land so conveyed to the appellee or any part thereof, the deed of conveyance to the appellant purporting to convey 1,400 acres of land, "together with all improvements, live stock, machinery, fixtures, and one-third of the crops now on the premises; the said farm now being subject to an encumbrance of $10,000 and the taxes of 1896."

It was further shown that seven of the interest notes became due and remained unpaid, "and all persons refusing and wholly failing to pay any part of the same for the defendant herein or any other person, this plaintiff was compelled to and did pay the whole of each of said interest notes." It was alleged that by reason of the provision above mentioned making the whole mortgage debt due upon failure to pay any part of it when due, and the failure of the appellee "to pay her proportionate part of said interest, this plaintiff did pay the same to prevent the foreclosure of said mortgage against him on account of her default; that no part of the said amount has ever been repaid to this plain-

tiff, and the same is now long past due and remains wholly unpaid; that to prosecute this action plaintiff has been compelled to employ an attorney, and a reasonable fee for his attorney herein is $100." Prayer, that the appellant be subrogated "to the rights of the said mortgage" as against the appellee, "for the amount of the said interest which this plaintiff has paid on the said mortgage which should have been paid by the said defendant, for the sum of $300 for his principal, interest, and attorney's fees herein, all without relief from valuation or appraisement laws, and that the said mortgaged real estate be ordered sold, to pay the said judgment of this plaintiff, and that the plaintiff have all other proper relief in the premises."

The relief prayed for by the appellant, if allowable, is to be sought and administered upon equitable principles. The anomalous assumptions of the entire mortgage debt by both of the mortgagor's grantees of the portions of the mortgaged real estate conveyed to John Foster and his wife, respectively, were promises made by them severally to the mortgagor for the benefit of the mortgagee, and no personal liability of either of these grantees inured to the appellant, who received, for the expressed consideration of $1, merely the interest of John Foster in the mortgaged land, with additional land, by deed, without covenants, in which the land thereby conveyed was expressly declared to be subject to an encumbrance of the amount of the mortgage assumed by the Fosters severally. The portion of the mortgaged real estate thus conveyed to the appellant was primarily liable for the mortgage debt, and the portion owned by the appellee also continued subject to the mortgage, and, as between the mortgagee, the mortgagor, and the appellee, primarily liable for the debt.

The general rule is that where the estates of two or more persons are subject to a common encumbrance, for the payment of a common debt, it is to be borne ratably by all, and one who pays the whole for the benefit of all will have the

right to hold all the estates thus redeemed, until the others shall reimburse him an equitable proportion of the sum which he has thus paid for their common benefit. Sheldon on Subrogation, §74.

Where one discharges a lien which rests alike upon the property of himself and others, he is entitled to contribution from those whose property has been relieved from the common burden. *Falley* v. *Gribling,* 128 Ind. 110; *Kaufman* v. *Elder,* 154 Ind. 157. The doctrine of contribution in such cases rests on the principle that when parties stand in equal right equality of burthen becomes equity. *Cook* v. *Cook,* 92 Ind. 398.

When a mortgage rests upon land, "which is owned by several persons in such a manner that their equities as between themselves are equal, and one of them redeems from the mortgage, he is entitled to a *pro rata* contribution from the other owners, and may keep the lien of the mortgage alive, by equitable assignment, as security for such contributions." Pomeroy's Eq. Jur., §1222.

The complaint before us does not show that the plaintiff seeking contribution and subrogation has paid the entire mortgage debt. In *Rooker* v. *Benson,* 83 Ind. 250, 256, the following statement in *Grove* v. *Brien,* 1 Md. 438, is quoted with approval: "A partial payment by a surety does not operate as an assignment to him, *pro tanto,* so as to enable him to exercise any control over the judgment or execution, the original creditor having that power until he is fully satisfied."

A surety or a tenant in common is not entitled to be subrogated to the creditor's rights in the security held by him until the whole debt has been paid. *Zook* v. *Clemmer,* 44 Ind. 15; *Vert* v. *Voss,* 74 Ind. 565; *Rooker* v. *Benson, supra; Carithers* v. *Stuart,* 87 Ind. 424.

In the absence of agreement of the creditor and the person making a payment, subrogation is not permitted where the debt is not fully paid. *Stuckman* v. *Roose,* 147 Ind. 402; *Morrow* v. *United States, etc., Co.,* 96 Ind. 21.

"The debt being a unit, no party interested in the whole premises, or in any portion of them, can compel the mortgagee to accept a part of the debt, and to relieve the property *pro tanto* from the lien. Furthermore, if the person redeeming has only a partial interest in the premises, and there are other partial owners also interested in having the lien of the mortgage removed from their estates,—such as coöwners, life tenants, reversioners, remaindermen, and the like, he can not compel them in the first instance to advance their proportionate shares for the purpose of paying off the debt; he must himself redeem the whole mortgage, and his only equity against them consists in his right to enforce the mortgage upon their estates as a security for obtaining a subsequent contribution." Pomeroy's Eq. Jur. §1220.

The doctrine of subrogation is of purely equitable origin and nature, and its operation is always controlled by equitable principles. Pomeroy's Eq. Jur. §1419, n; *Warford* v. *Hankins,* 150 Ind. 489; *Davis* v. *Schlemmer,* 150 Ind. 472.

It should affirmatively appear in the complaint of one seeking subrogation that equity and good conscience will be promoted by keeping on foot and enforcing for his benefit the security for the debt which he has paid.

A purchaser who assumes the payment of a prior mortgage is personally liable for the payment of the debt secured thereby, while a purchaser who buys merely subject to such mortgage does not assume a personal liability; but in each of such cases the purchaser takes the land charged with the payment of the debt. If the purchase be subject to the mortgage, the land, as between the purchaser and the mortgagee, is the primary fund out of which the debt is payable. In such case the grantee is presumed to have retained the amount recited in his deed as the mortgage debt out of the purchase-price paid by him. One thus purchasing subject to a mortgage, not being personally and primarily liable to pay the mortgage debt, who pays off the mortgage to protect his land, may keep the lien thereof alive as a security for

himself against other encumbrances. The doctrine of subrogation applies to enable him to assert the lien where equity and good conscience allow it. *Hancock* v. *Fleming,* 103 Ind. 533; *Braden* v. *Graves,* 85 Ind. 92.

The right of subrogation extends "to every instance in which the position of the two parties is such as to render one of them primarily liable for a debt which is a charge on the person or estate of the other, because under these circumstances payment will give the latter a right to enforce all the remedies of the creditor against the former, or, in other words, entitle him to subrogation." 1 White & T. Lead. Cas. (3rd Am. ed.) 153, quoted per Buskirk, J., in *Zook* v. *Clemmer,* 44 Ind. 15, 29.

The right of subrogation extends to cases where one is compelled to pay a debt which should, in equity and good conscience, be paid by another. *Morris* v. *Oakford,* 9 Pa. St. 498; *Zook* v. *Clemmer, supra.*

Where one pays an encumbrance which it is his duty to pay, or for which he is primarily liable, it is extinguished. *Shirk* v. *Whitten,* 131 Ind. 455; *Birke* v. *Abbott,* 103 Ind. 1, 53 Am. Rep. 474.

The right of subrogation does not exist in favor of one who has paid the mortgage debt for which he himself was personally and primarily liable, whose duty it was to pay the debt before all others.

If the principle of subrogation can operate in favor of the appellant, upon his full payment of the mortgage debt, it must be on the ground that his interest recognized at law or in equity can only be fully protected and maintained by regarding the transaction as an assignment to him and the lien of the mortgage as being kept alive in whole or in part for his security and benefit. Pomeroy's Eq. Jur. §1211.

When upon the sale and conveyance of a portion of a tract of land the grantee by the terms of the deed of conveyance assumes and agrees to pay an existing mortgage upon the entire tract, the portion so conveyed becomes the

primary security and the grantee is bound to protect the owner of the remaining portion from loss by reason of the mortgage. *Fleming* v. *Reed,* 20 Ind. App. 462.

It would be at the pleasure of the mortgagee to resort or not to resort to the personal liability of John Foster, which had become a secondary security, the portion of the mortgaged land conveyed to and by him having become a primary fund, and, also, it would be at.his pleasure to resort or not to resort to the personal liability of the appellee and her portion of the mortgaged land.

If the mortgage were satisfied by the application to its payment of the land sold to the appellant, the debt would be extinguished, and the appellant having taken his portion of the mortgaged land subject to the mortgage, he could not complain if his portion were all taken under the mortgage through his failure to pay off the encumbrance, which presumably entered into the consideration for the quitclaim.

The appellant did not become personally bound for the mortgage debt, but the real estate conveyed to him became in his hands a primary fund for the payment of the mortgage debt, and to the extent of that real estate he became a principal debtor upon the mortgage, and John Foster became surety for the appellant to the mortgage creditor, and had an equity to compel the sale of the mortgaged land of the appellant before resort to him. *Brewer* v. *Staples,* 3 Sandf. Ch. 579.

John Foster and the appellee each having assumed the entire mortgage debt, could not have contribution as between themselves, each being primarily chargeable with the entire mortgage, and each being a principal debtor. If but one of them had assumed the debt, and the other had not done so, the latter would have been entitled to exoneration as against the former. *Zabriskie* v. *Salter,* 80 N. Y. 555; 3 Pomeroy's Eq. Jur. §1225, n. 1, p. 214.

The portion held by John Foster was subject to the entire mortgage; if it had been subjected to pay the whole debt,

John Foster could not have had contribution from the appellee. John Foster released his interest in the land to the appellant, stating in the deed that it was subject to an encumbrance for a specified amount, the mortgage debt.

"Whenever the equities of any original grantee" of the mortgagor "towards the other parties have been fixed, either by the form of his deed, or by his own omissions or dealings, then any subsequent purchaser or encumbrancer from such grantee takes the parcel subject to the same equities which originally attached to it; the same equities follow the parcel in its devolutions." Pomeroy's Eq. Jur. §1225.

If John Foster had no equity as against the appellee to compel contribution or exoneration upon payment by him of the mortgage debt, could he by his conveyance to a third person give his grantee such an equity?

In *Zabriske* v. *Salter, supra,* Wittenberg, the owner of three parcels of land designated as A, B, and C, executed a mortgage thereon for $3,000 and sold the property to Brooks subject to the mortgage. Brooks executed a second mortgage for $4,000 and transferred the property to Drummond subject to both mortgages. Drummond, the next day, conveyed the land in three parcels to different grantees, parcels A and B free from encumbrance, and C subject to said two mortgages and also subject to two other mortgages executed by himself on parcel C. It was held that "by this act the equities between these grantees would be to charge parcel C primarily with the payment of the first two mortgages," etc.

In *Engle* v. *Haines,* 5 N. J. Eq. 186, it was said by the chancellor: "If a mortgagor, subsequently to the mortgage, sells and conveys a part of the mortgaged premises, an equity arises in favor of the purchaser, to have that part of the mortgaged premises which remains in the mortgagor first sold for or towards the payment of the mortgage; but if such subsequent purchaser agrees with the mortgagor that the part he buys shall be subject to the mortgage, and that

the amount due on the mortgage shall be a part of the consideration for the portion he buys, equity will not interpose to protect him, by subjecting the part of the mortgaged premises remaining in the mortgagor to be first sold. A subsequent purchaser of such portion from the grantee of the mortgagor, with notice of the facts, has no better equity against the mortgagor than the first purchaser."

In *Crenshaw* v. *Thackston,* 14 S. C. 437, Thackston, being the owner of 260 acres of land, mortgaged the entire tract to Lenhart in 1876 to secure a note for $346.55, due January 1, 1877. Afterward, in 1876, Thackston sold 100 acres of the mortgaged land to Ford for about $1,400, and Ford retained enough of the purchase money to pay off the mortgage debt and signed an agreement to pay the same, and paid the remainder, about $1,000, in cash. In January, 1877, Ford sold to Wilson in payment of an indebtedness. Wilson did not agree to pay the mortgage debt, or to pay more than $1,000 for the land. Wilson then knew of the mortgage and that Ford was to pay it. Later the 260 acres being advertised for sale by Lenhart to foreclose his mortgage, Wilson, to prevent the sale, paid the mortgage debt and took an assignment thereof, which afterward he assigned to Crenshaw, who brought suit against Thackston and Wilson on the note and mortgage. It was held that Ford's agreement with Thackston made the 100 acres conveyed to Ford first liable for the mortgage debt, and that by reason of sufficient notice it remained so liable in the hands of Wilson. It was said that the equity of the mortgagor-grantor, Thackston, to have the mortgage paid out of the portion of the land conveyed to Ford followed that portion into the hands of Wilson, Ford's grantee, who bought with knowledge of the mortgage and of Ford's agreement to pay it,—under the equitable doctrine that where one purchases property subject to the equity of another, with notice of such equity, he is bound by it and holds the property subject to the equitable rights of the other.

The appellant took his portion of the mortgaged land expressly subject to the mortgage debt. Want of notice that the portion which he received· without covenants from John Foster was charged with the entire mortgage debt does not appear. This equity attached to this portion of the land. The appellant could not be held liable personally for any part of the debt, but he shows no right to claim reimbursement from any one or out of any other portion of the mortgaged land for any portion of the mortgage debt paid off by him; and therefore there was no occasion for the operation of the equitable doctrine of subrogation.

Judgment affirmed.