MICHAEL L. COOK *v.* AMERICAN STATES INSURANCE COMPANY.

[No. 1070A174. Filed November 30, 1971.]

*John L. Carroll, Charles C. Griffith, Johnson and Carroll,* of Evansville, for appellant.

*Mark W. Gray, Howard J. DeTrude, Jr., John T. Lorenz, Kightlinger Young Gray and Hudson,* of Indianapolis, for appellee.

LOWDERMILK, J.—This action was originally brought by American States Insurance Company against Donald Lee McIntire and Michael L. Cook on a note which was secured by a mortgage and to foreclose the mortgage. That suit was dismissed and the suit at bar was brought solely against Michael L. Cook, the appellant herein.

The facts are, briefly, that on and prior to May 1, 1962, the defendant-appellant, Michael L. Cook, was the owner of a three acre tract of land lying in Vanderburgh County, Indiana, upon which a dwelling was situated. Cook had purchased the land on November 5, 1958, and sold it to McIntire about May 1st, 1962. Prior to May 1, 1962, defendant-appellant Cook had mortgaged said real estate to First Federal Savings & Loan Association of Evansville, which we shall hereafter refer to as the "Loan Association", in the principal sum of $6,800.

Defendant-appellant Michael L. Cook conveyed said tract of real estate by warranty deed to the defendant Donald Lee McIntire, which deed provided that it was "Subject to the unpaid balance of $5,679.77 due the Loan Association * * * which said mortgage the grantee assumes and agrees to pay."

This deed to McIntire was made with the knowledge and consent of the Loan Association.

Although defendant-appellant Cook was in the insurance business, McIntire elected that Cook cancel his insurance and he bought a fire policy from another agent, which was accepted by the Loan Association to protect their interest through the note and mortgage.

On or about May 29, 1962, the dwelling on the premises was totally destroyed by fire. McIntire made claim to the plaintiff-appellee under his fire policy, which was declined, but payment was made by the insurance company to the Loan Association in the sum of $5,781.46, which was the balance due on the mortgage at that time. This was in compliance with the proof of loss form filed by the Loan Association with the plaintiff-appellee. Following the payment of said sum to the Loan Association, upon request of plaintiff-appellee American States Insurance Company, the Loan Association assigned all its mortgage rights to said insurance company.

Thereafter, the insurance company made demand upon defendant-appellant for payment of the balance due on the promissory note which was secured by his mortgage when he purchased the real estate and which he declined to pay.

This was followed by the appellee American States Insurance Company filing suit to foreclose the mortgage against both McIntire and Cook in Vanderburgh County. Thereafter, the suit was dismissed by the insurance company in a dismissal entry which recited "The defendant Donald Lee McIntire has transferred his interest in the property and is no longer entitled thereto," and upon motion of the appellee insurance company the cause was dismissed as to the defendant Donald

Lee McIntire. This dismissal came eight days after McIntire quitclaimed all his right, title and interest in and to said real estate to Mark W. Gray, attorney at law, acting for and representing the appellee American States Insurance Company as their attorney in this cause, as trustee for said insurance company, the appellee herein.

Following the dismissal of said original suit for foreclosure against McIntire and Cook, the appellant herein, appellee American States Insurance Company filed a new suit in the Vanderburgh Circuit Court on July 17, 1964 against Cook, which suit was entitled "Complaint for Foreclosure of a Mortgage," but the allegations of the complaint, together with the prayer, were solely for the purpose of recovering judgment on a promissory note executed by Michael L. Cook to the Loan Association and allegedly assigned by such Loan Association to appellee American States Insurance Company. This assignment was done at the time American States Insurance Company had the title to the property covered by the mortgage which was security for the note and at such time said title was being held for them by their said trustee, Mark W. Gray, one of their attorneys.

Trial was to the court without a jury, which found for the plaintiff, that plaintiff was entitled to recover of and from the defendant Cook the sum of $5,281.46 with interest at the rate of 6% after December 28, 1962, and entered judgment thereon accordingly.

Appellant timely filed his motion for new trial and requested oral argument, which was had and the finding was taken under advisement by the court on the 18th day of December 1968.

The motion for new trial was not ruled upon until August 7, 1970, and at that time the court ruled adversely to defendant-appellant.

All of this brings us to a problem under the Supreme Court Rules which became effective January 1, 1970, as this cause

was tried before the adoption and apparently the lawyers were in a quandary as to whether to file an assignment of errors under the old Rules or file some form of pleading to try to comply with the motion to correct errors under the new Rules. The record is silent on this; however, Mark W. Gray, on April 19, 1971, wrote appellant's attorney a letter which is set out in appellant's reply brief, confirming a telephone conversation between counsel to the effect that no technical question would be raised as to the form of motion for new trial and that that ground would not be placed at argument and would, if necessary, be waived before the court. It further stated that their position was that the matter should be determined on its merits. In oral argument neither the appellant nor the appellee made mention of this and any problem which may have been presented was waived.

Although this letter is in the reply brief it is not a part of the record, and the lawyers in this case being men of integrity, and there having been such great confusion at the time of the transition from the old Rules to the new, we are proceeding to hear this appeal rather than try to dispose of it on some technical error, as the briefs are sufficient so that we can ascertain what the errors relied upon are.

In defendant-appellant's motion for new trial there were five questions raised, with memorandum applying thereto containing eight specifications. And now we find that defendant-appellant relies on the first two specifications of the motion for new trial, namely, (1) the decision of the court is not sustained by sufficient evidence, and (2) the decision of the court is contrary to law. The memorandum portion of the motion for new trial, which contains the eight specifications, reads as follows, to-wit:

"The decision of the Court is not sustained by sufficient evidence and is contrary to law in the following particulars:

"1. Plaintiff is no longer the owner of any rights against the defendant, plaintiff having settled and released the principal debtor, Donald Lee McIntire.

"2. By the acceptance of the deed from Donald Lee McIntire the mortgage and the indebtedness secured thereby were merged.

"3. The record shows as a matter of law the plaintiff has been fully paid and the obligation satisfied.

"4. Plaintiff has wholly failed to show that it has any subrogation rights against the defendant. The payment by the plaintiff to the mortgage holder was a payment in discharge of its contractual obligation under its policy of insurance and not of purchase of the mortgage obligations, so that such payment by plaintiff was satisfaction and discharge of the mortgage obligation and there remains, therefore, no debt for which the defendant was liable.

"5. The record affirmatively shows that under the facts in this case Donald Lee McIntire was the principal obligor and the defendant was, at best, a surety. The plaintiff has failed to pursue either the principal obligor or the land which was the principal fund out of which the debt should be paid.

"6. The release of McIntire by the acceptance of the quit-claim deed and the dismissal of the lawsuit against McIntire amounted to a release of the defendant herein.

"7. The plaintiff has wholly failed to bring itself within the subrogation clause of its policy, in that there was no evidence from which the Court could determine that the plaintiff was justified in denying liability to Donald Lee McIntire under its insurance contract. On the contrary, the record affirmatively shows that denial of liability was not based upon suspected arson.

"8. The acceptance of the deed by plaintiff from McIntire merged the fee with the mortgage interest, thus extinguishing the mortgage. Plaintiff has thus effectually precluded defendant from asserting any rights against McIntire, since: (a) the mortgage interest has since been merged, and (b) plaintiff released McIntire from liability under the note and mortgage.

"Oral argument respectfully requested."

It is the contention of defendant-appellant that when McIntire purchased the three acre tract by warranty deed and by the terms of such deed McIntire assumed and agreed to pay the mortgage to the Loan Association that when McIntire, the grantee of the deed, assumed and agreed to pay his

grantor's mortgage, the relationship between the grantee and the grantor becomes one of principal and surety respectively. In support of this contention defendant-appellant cites *Hancock* v. *Fleming* (1885), 103 Ind. 533, 535, 3 N. E. 254, in which the court said:

> " 'The difference between the purchasers assuming the payment of the mortgage, and simply buying subject to the mortgage, is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability . . .' The land, nevertheless, remained the primary fund as between the purchaser and the mortgagee, out of which payment of the debt must be made."

However, the rule is different where the grantee assumes and agrees to pay the mortgage indebtedness, as set out in *Gross Income Tax Div.* v. *Crown Develop. Co., Inc.* (1952), 231 Ind. 449, 109 N. E. 2d 426, 428, in which our Supreme Court stated:

> ". . . it may be stated that when the owner of real estate borrows money and secures the lender by a mortgage on the real estate, such transaction creates a mortgage interest in the real estate in the mortgagee, and thereby the owner reduces his own interest to the extent and by the amount of the mortgage interest so created. If the owner thereafter sells the real estate and in his deed of conveyance specifies that the grantee assumes and agrees to pay such mortgage indebtedness, the grantee then becomes the principal debtor and the grantor is relegated to the secondary relationship of a surety."

In *Black* v. *Krauss* (1949), 119 Ind. App. 529, 537, 85 N. E. 2d 647, it is clear that the assumption of a mortgage and an agreement to pay the mortgage indebtedness by the grantee creates a direct liability from the grantee to the mortgage creditor. In that case the court stated:

> "The law is settled that a grantee of real estate, the deed of conveyance to whom contains a stipulation for his assumption of a debt secured by mortgage thereon, which debt his grantor is personally bound to pay, becomes, by the

acceptance of such deed, *personally bound to the mortgage creditor;* and, as between such grantee and his grantor, the former becomes the principal debtor, while the latter becomes a surety. * * *" (Our emphasis.)

It is the law in Indiana that one who conveys mortgaged real estate to a grantee, whether the purchaser assumes the payment of a prior mortgage or the purchaser buys merely subject to such mortgage, that in each case the purchaser takes the land charged with the payment of the debt. *Springer* v. *Foster* (1901), 27 Ind. App. 15, 60 N. E. 720.

In *Springer* v. *Foster, supra,* the land is definitely the primary fund out of which the debt is payable.

In *Black* v. *Krauss, supra,* the court further held as follows:

"* * * And, 'where a purchaser has assumed the payment of a mortgage and has subsequently conveyed the land to the mortgagee by a deed reciting that the conveyance is subject to a mortgage, . . . the mortgage will be regarded as paid and discharged, so that the mortgagee cannot maintain an action against the mortgagor upon the mortgage note, although the value of the land at the time of the conveyance is less than the debt secured. . . .'"

Further, in the *Black* case, the court said:

"In the instant case, if the circumstances shown amounted to a release by appellant of Luhring from his liability to pay the Barrett Law assessment, which liability was assumed by Luhring in the deed to him, Krauss would thereby be relieved from any liability to appellant on the bonds or for a deficiency arising upon a foreclosure."

Notice must be taken that in *Black* v. *Krauss, supra,* the conveyance was not directly to the mortgagee, but was to Pocket Realty Company, which was really acting as agents or trustees for the mortgagee, and the court specifically held that the dealing with Pocket Realty Company was dealing directly with the mortgagee.

In the case at bar the conveyance to Mark W. Gray, trustee,

who is one of the attorneys of record for the plaintiff-appellee, American States Insurance Company, is clearly the equivalent of dealing directly with American States Insurance Company and his accepting the quitclaim deed from McIntire in full satisfaction of the obligations of Donald L. McIntire to the appellee, American States Insurance Company, is an acceptance by American States Insurance Company and is, in our opinion, in full satisfaction of the obligations of Donald L. McIntire to the plaintiff-appellee, American States Insurance Company.

Defendant-appellant insists that he was, at that time, surety, and was fully and finally discharged.

In the case at bar the plaintiff-appellee accepted from McIntire, the principal debtor, the three acres of land which was the collateral under the real estate mortgage and was the security, and it is clear that the land took the form of an exchange and was given as payment.

> "The sale of land may take the form of an exchange. This occurs when the buyer pays a part or all of the purchase price in other lands. When this is done in the absence of fraud, it has the same legal effect as if the agreed value thereof had been paid in money . . . as there is no question of fraud in the instant case, we may treat the conveyance of the real estate made by appellants to appellee Greer as the payment of its value in money, . . ." *Boyd* v. *Greer,* (1919), 70 Ind. App. 77, 123 N. E. 122.

We are of the opinion that it makes no difference that payment be made in kind, and the fact that payment was made by the transfer of the three acres rather than a money consideration is immaterial and constitutes payment. In the case at bar it appears to the court from the evidence that McIntire entered into a bona fide contract with the plaintiff-appellee and performed an exchange based upon a bona fide consideration. Plaintiff-appellee accepted a deed to the three acres which was a bona fide consideration and Donald L. McIntire was released from a lawsuit.

McIntire had a legal obligation to protect his surety and since McIntire was the principal obligor on the deed, pursuant to the terms of the deed from Cook to McIntire and since plaintiff-appellee accepted the quitclaim deed to the property and in turn released Donald L. McIntire from the suit for foreclosure of the mortgage, *such transaction constituted payment and fully discharged Donald L. McIntire as principal from his obligation and likewise discharged the surety, the defendant-appellant herein, Michael L. Cook.*

Payment or satisfaction of a debt may be made by a third person to a creditor and if accepted by him is satisfaction.

"A principal is bound by every rule of moral and legal obligation to protect its surety from the payment of the debt for which he is surety." *Ritenour* v. *Mathews* (1873), 42 Ind. 7.

In *Lutz* v. *Frick Co.* (1962), 242 Ind. 599, 181 N. E. 2d 14, the Supreme Court quoted from *Crouch & Son* v. *Parker* (1919), 188 Ind. 660, 667, 125 N. E. 453, 456, 7 A. L. R. 1598, 1603, as follows:

" '. . . It is a sound and well-settled principle of law that sureties are not to be made liable beyond their contract, and any agreement with the creditor, which varies essentially the terms of the contract, without the assent of the surety, will discharge him from responsibility . . .'

"Part payment founded upon a valid agreement and consideration between the principal and creditor discharges the surety. 50 Am. Jur., Suretyship, § 122, p. 984. As stated by this Court:

" '. . . The extinguishment of the direct engagement of the principal, no matter how accomplished, extinguishes the collateral liability of the surety. . . .' *Bridges, Administrator* v. *Blake et al.* (1886), 106 Ind. 332, 335, 6 N. E. 833, 835.

" 'The general rule is that a surety is discharged when the liability of his principal is extinguished. . . .' *McKee* v. *Hardwood Automotive Co.* (1932), 204 Ind. 233, 236, 183 N. E. 646, 647."

Courts will not inquire into the adequacy of consideration. Consideration for a contract is of an indeterminate value and the courts will not undertake to determine its adequacy. ■ In the case of *Vigo Agricultural Society* v. *Brumfiel* (1885), 102 Ind. 146, 1 N. E. 382, the court said:

> "Where a consideration of an indeterminate value is agreed upon by the parties, the courts will not undertake to determine its adequacy, but will respect the judgment of the parties and enforce their contract." In *Farber* v. *National Forge & Iron Company* (1894), 140 Ind. 54, the court said:
>
> "The courts do not inquire into the adequacy of a bona fide consideration." See, also, *Wilson* v. *Dexter* (1963), 135 Ind. App. 247, 192 N. E. 2d 469.

The appellee American States Insurance Company refers to and sets out some of the cases relied upon by defendant-appellant as well as many other cases pertaining to the matter of suretyship and agrees with defendant-appellant that in Indiana where a grantee who agrees and assumes a mortgage thereby becomes primarily liable for the debt, and while the grantor will remain secondarily liable he became surety and his grantee is the principal debtor.

This court is of the opinion that since defendant-appellant assigned the mortgage to the grantee McIntire, who assumed and agreed to pay the unpaid balance thereof that the relationship of principal and surety existed between defendant-appellant Cook and McIntire and that McIntire was the principal obligor and Cook the surety.

We are of the further opinion that after the plaintiff-appellee commenced suit on the note and to foreclose the mortgage against McIntire and Cook and dismissed the same after McIntire executed a quitclaim deed for $1 and other valuable considerations, which amount is unknown to this court, and which necessarily conveyed the bare three acre tract to plaintiff-appellee's attorney as trustee, which was valued at $500 and $750 and found to be worth $500 by the court, that

the same was a conveyance to the plaintiff-appellee. This left the defendant-appellant Cook with no rights and no opportunity in the event a judgment of foreclosure had been taken against him to have had the three acres sold and realized what he might have from the sale of the land and have credited the same on the judgment against him.

We are of the further opinion that the dealings between plaintiff-appellee and McIntire up to this time were in bad faith and inequitable by the dismissal of the first suit and the filing of the second suit against defendant-appellant Cook on his note alone.

Appellee American States Insurance Company has attempted, by use of words and by its construction of cases cited, to show that there is no merit at all in appellant Cook's brief and argument thereto.

Appellee American States Insurance Company asserts, under specification 2 of its argument, as follows:

"In point 1, Defendant-Appellant attempts to assert that since he conveyed the encumbered land to Mr. McIntire and Mr. McIntire assumed the existing mortgage that he has ex parte made himself surety and is no longer liable as a primary obligor. In making this assertion, Defendant-Appellant has misinterpreted Indiana law. As between McIntire and Cook (Defendant-Apppellant), McIntire becomes the principal obligor and Cook becomes a surety, but as between Cook and First Federal Savings and Loan and its assignee, both Defendant-Appellant Cook and McIntire become principal obligors. This is readily seen when the Indiana cases are read and analyzed."

Appellee then quotes from *Todd* v. *Oglebay* (1902), 158 Ind. 595, 599, 64 N. E. 32, as follows:

"It is well established in this State that a grantee who agrees and assumes to pay off an encumbrance on the land, as a part of the purchase price, thereby becomes to the lien creditor primarily liable for the debt; *and while the grantor will remain equally bound by his obligation, yet, as between him and his grantee, he became surety, and his grantee principal debtor.* As between the parties to the deed, the

encumbrance became the debt of the grantee. *Stanton* v. *Kenrick*, 135 Ind. 382; *Ellis* v. *Johnson*, 96 Ind. 377; *Rodenbarger* v. *Bramblett*, 78 Ind. 213; *Campbell* v. *Patterson*, 58 Ind. 66; *Josselyn* v. *Edwards*, 57 Ind. 212." (Their emphasis.)

This court cannot agree that the Todd case says what appellee American States Insurance Company argues. The *Todd* case actually says that in Indiana, where a grantee who agrees and assumes to pay an encumbrance on the land as a part of the purchase price that he thereby becomes to the lien creditor primarily liable for the debt; *and while the grantor will remain equally bound by his obligation, yet as between him and the grantee, he becomes surety and his grantee becomes principal debtor.* As between the parties to the deed the encumbrance becomes the debt of the grantee. The parties to the deed were Cook, grantor, who conveyed to McIntire, grantee, and this case specifically says that, as between those two parties, the encumbrance became the debt of McIntire. This fully corroborates appellant Cook's argument and cases cited that appellant Cook became a surety upon the execution of the deed to McIntire, using the words heretofore set out, whereby McIntire "assumed and agreed to pay the unpaid balance."

Appellee American States Insurance Company further cites the case of *Stanton* v. *Kenrick, et al.* (1893), 135 Ind. 382, 389, 35 N. E. 19, which says:

"One who, in a deed, assumes and promises to pay an encumbrance upon land as a part of the purchase price, becomes, by that assumption and promise, the principal debtor to the holder of the encumbrance, and liable to be sued himself for the debt, in the first instance; *and while the grantor remains bound for the obligation, yet, as between grantor and grantee, the former is surety and the latter principal.*" (Their emphasis.)

This case holds exactly what we have determined the law to be earlier in this opinion and cited authority to prove the same.

This court agrees that in the first instance when the note and mortgage were past due that the appellee American States Insurance Company had full legal right to file suit to foreclose the note and on the mortgage against McIntire and Cook. We cannot and do not agree that appellee American States Insurance Company was doing an equitable thing when they dismissed the complaint to foreclose the mortgage and on the note against both defendants and release McIntire, but did not release Cook. We still remain of the opinion, as heretofore stated, that the transfer from McIntire to attorney Gray, as trustee, and taking over the three acres of land where the house which had been insured had stood was not an equitable act, as we have heretofore stated that to permit that and sue Cook on his note alone, is not an equitable act on the part of the appellee American States Insurance Company, as Cook had no opportunity to have the equity in the three acres of land, if any, applied to the judgment in case they took a judgment on the note, as he had divested himself of all title in his deed to McIntire.

Appellee American States Insurance Company argues with Cook's contention that when Mark Gray, trustee, accepted the quitclaim deed from McIntire the indebtedness was merged with the mortgage. We have heretofore shown where it did merge and why it did merge and this is more subterfuge on the part of the appellee American States Insurance Company, whereby they are trying to make double recovery on the fire loss. In this contention, appellee American States Insurance Company cites from *Chase et al.* v. *Van Meter* (1894), 140 Ind. 321, 333, 334, 39 N. E. 455, wherein that case quotes from *Willis* v. *Cooper* (1 Dutcher's Rep. 165), which, in the interests of brevity will not be fully set out, but only the part which we feel is pertinent, as follows:

"* * * If it appears from all the circumstances to be for the benefits of the party acquiring both interests, that merger shall not take place, but that the equitable or lesser estate shall be kept alive, then his intention that such a

result will follow will be presumed and equity will carry it into execution by preventing a merger."

Appellee American States Insurance Company contends that *Black* v. *Krauss, supra,* does not apply, but we have heretofore discussed that case and hold firmly against appellee American States Insurance Company on that point.

Appellee further contends that the foreclosure action has no bearing on the action for a personal judgment; that a foreclosure action is an action in rem, whereas this action is an action in personam. It contends that in the first instance the appellee is entitled to foreclose the security, but this does not affect its right to a personal judgment against the obligee on the note.

It backs its position by citing the case of *Huston* v. *Fatka* (1902), 30 Ind. App. 693, 66 N. E. 74. We have no argument with its contention as to what the law is here; however, since we have heretofore held that there was a merger, there could be no legal action remaining against Cook.

Appellee American States further misrepresents to the court the following:

"The facts of this case demonstrate that there was no payment and no discharge of anyone; therefore, the trial Court was correct in its finding and judgment."

Appellee American States Insurance Company has, theretofore in its brief, admitted the dismissal of the case against McIntire and the acceptance of the trustee's deed to their attorney.

Appellee American States Insurance Company further contends that it had a right of subrogation and has a right to take an assignment of the original note and mortgage and cites as authority for its position the case of *Insurance Co. of North America* v. *Martin, et al.* (1898), 151 Ind. 209, 51 N. E. 361, wherein a similar subrogation clause was contained in a fire policy. This court will agree that insurance companies

have a legal right to write subrogation agreements in their policies.

McIntire, after the fire, made claim to the American States Insurance Company for the payment to him of the principal of the policy, which was $15,000 and which policy replaced a $8,500 policy, including contents, which Cook had originally had on the same property when he purchased it several years before the sale. No doubt the appellee American States Insurance Company had a record in their file of the lesser value of the property when Cook insured the double amount when McIntire insured it, yet it must be inferred that they accepted the premium on that amount or they would not have delivered the policy. The appellee American States Insurance Company paid the loan company under the McIntire policy and became subrogated to all rights of the mortgagee loan company.

Appellee American States Insurance Company admits that it was a bona fide assignee of the original debt and mortgage and as such, stepped into the shoes of the mortgagee. When it stepped into the shoes of the mortgagee it did so by the acceptance of the deed from McIntire to the land in which Cook had no interest by virtue of the terms of his deed conveying the said real estate to McIntire.

We shall not discuss specifications 6, 7 and 8 of appellee's brief, as we have heretofore adequately, in our opinion, covered everything raised thereby.

It is one of the maxims of equity that one who asks equity must do equity. It is another that one who asks equity must come into court with clean hands. We reiterate that we cannot agree with plaintiff-appellee's contention that appellant Cook is a principal obligor rather than a surety. However, from the cases cited in the briefs it appears elementary to this court that payment by the person primarily liable on a debt will discharge himself and will likewise discharge his surety. Thus, it is clear as a matter of law that since McIntire was primarily liable and Cook was only a surety that plaintiff-appellee has been fully paid and any obligation

which defendant-appellant Cook may have originally had has been fully discharged.

The conclusion here is inescapable that the loan company was paid its loss by the American States Insurance Company and the plaintiff-appellee received partial reimbursement by acquiring the three acres of land through their attorney as trustee, which would have left Cook with no opportunity at all for recoupment on the sale of the land if there was any equity therein, by foreclosure had he not been discharged as heretofore set out in this opinion. This court firmly believes that one who asks equity must do equity, and operates on that principle, exerting every effort to be fair and impartial to all litigants.

It being the law in Indiana that a reversal on only one specification of error where there are more than one specification, is sufficient, this court will not write on any other specifications of error. *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N. E. 2d 127; *Bd. of Com'nrs. etc.* v. *Flowers* (1964), 136 Ind. App. 597, 201 N. E. 2d 571.

For the above reasons the judgment of the trial court is reversed and the trial judge is ordered and directed to enter of record a judgment for the defendant-appellant Michael L. Cook, that the judgment against him be reversed, and the record made accordingly.

Judgment reversed.

Robertson, J., concurs; Sullivan, P.J., concurs with opinion in which Buchanan, J., concurs.

### Concurring Opinion

Sullivan, P.J.—While I concur with the result obtained in the primary opinion, I cannot subscribe to all of the reasoning or statements used to support that result, particularly to the extent that that opinion implies or holds that a mortgage assumption by a grantee renders the grantor-mortgagor a mere surety *as to the creditor*.

The parties have characterized the real issue here as follows: Did the relationship of Michael Cook, the grantor-mortgagor, to the mortgagee, First Federal Savings and Loan Association, become one of surety-creditor vis-à-vis principal obligor-creditor at the time McIntire "assumed" the mortgage obligation? Appellant contends, *inter alia,* that the plaintiff Insurance Company, as successor to the mortgagee's rights, has failed to pursue either the principal obligor (McIntire), or to proceed in rem against the real estate which in defendant's view was the principal fund out of which the debt should have been satisfied.[1] Appellant claims that as a matter of law pursuance of one such alternative remedies is a prerequisite to maintenance of a suit against him as the original mortgagor.

To adopt appellant's reasoning as to the categorization of his obligation to plaintiff-appellee would require modification of a well-founded principle of creditors' rights. It is well established that when a mortgage is assumed and although as between grantor and grantee the relationship of principal-surety exists, *Todd* v. *Oglebay* (1902), 158 Ind. 595, 64 N. E. 32, the relationship of the grantor-original borrower does not change as to the lender in the absence of an express agreement on the part of the mortgagee to look first to the grantee. *Geisen* v. *Karol* (1928), 86 Ind. App. 653, 159 N. E. 469. Thus appellant Cook and his grantee McIntire were principal obligors as to the mortgagee, First Federal. Supporting this principle is *Todd* v. *Oglebay, supra,* wherein the court stated at 158 Ind. 595, 599:

"It is well established in this State that a grantee who agrees and assumes to pay off as encumbrance on the land, as a part of the purchase price, thereby becomes to the lien

1. The law in Indiana does not state, as appellant contends, that the land is always the primary fund for satisfaction of the mortgage debt. The remedy of the mortgagee is confined to the land only "[w]hen there is no express agreement in the mortgage, nor any separate instrument given for the payment of the sum secured thereby." IC 1971, 34-1-53-2, being Ind. Ann. Stat. § 3-1813 (Burns 1968); *Cross* v. *Burns* (1861), 17 Ind. 441; *McLochlin* v. *Miller* (1966), 139 Ind. App. 443, 217 N. E. 2d 50.

creditor primarily liable for the debt; and, *while the grantor will remain equally bound by his obligation, yet, as between him and his grantee, he becomes surety, and his grantee principal debtor.* As between the parties to the deed, the encumbrance becomes the debt of the grantee." (Emphasis supplied)

This rule was reaffirmed in *Black* v. *Krauss* (1949), 119 Ind. App. 529, 85 N. E. 2d 647, which states at 119 Ind. App. 537:

"The law is settled that a grantee of real estate, the deed of conveyance to whom contains a stipulation for his assumption of a debt secured by mortgage thereon, which debt his grantor is personally bound to pay, becomes, by the acceptance of such deed, personally bound to the mortgage creditor; *and, as between such grantee and his grantor,* the former becomes the principal debtor, while the latter becomes a surety. (Emphasis supplied) *Ellis et al.* v. *Johnson, Trustee* (1884), 96 Ind. 377; *Figart* v. *Halderman* (1881), 75 Ind. 564; *Hill* v. *Minor* (1881), 79 Ind. 48."

*Gross Income Tax Div.* v. *Crown Develop. Co., Inc.* (1952), 231 Ind. 449, 109 N. E. 2d 426, is cited by the primary opinion for the proposition that the grantor as to all parties is but a surety. In *Crown,* the court said at 231 Ind. 449, 454, as quoted by the primary opinion here:

"[I]t may be stated that when the owner of real estate borrows money and secures the lender by a mortgage on the real estate, such transaction creates a mortgage interest in the real estate in the mortgagee, and thereby the owner reduces his own interest to the extent and by the amount of the mortgage interest so created. *If the owner thereafter sells the real estate and in his deed of conveyance specifies that the grantee assumes and agrees to pay such mortgage indebtedness, the grantee then becomes the principal debtor and the grantor is relegated to the secondary relationship of a surety.*" (Emphasis supplied)

It should be noted carefully that what the court in *Crown* said is literally true. However, the court there relied upon *Black* v. *Krauss, supra,* as its authority but in doing so has omitted the critical limiting language of the *Krauss* case:

*"and as between such grantee and his grantor,* the former becomes the principal debtor, while the latter becomes a surety."

I believe that the unfortunate omission in *Crown* may have led my brothers here to incorrectly interpret *Todd* v. *Oglebay, supra,* and therefore to erroneously reason that the surety status of the mortgagor-grantor extends to his relationship with the mortgagee as well.

Although the Indiana decisions discussed heretofore are not perfectly clear with respect to these particular principles as applicable to the tripartite relationship existing here, the general rules are clearly ascertainable from *Thompson on Real Property* (1958) § 4781 at 524-525, which states:

"The assumption [by a grantee] does not release the mortgagor unless the mortgagee so agrees. It may be proved against the mortgagor or his assuming grantee, or against both jointly. When the mortgage has been thus assumed by a purchaser, he may be made a party to a proceeding to foreclose, and a personal judgment had against him; or he may be sued on his personal liability without any proceeding to foreclose.

"A grantee who assumes a mortgage becomes as to the mortgagor the principal debtor, and the mortgagor a surety; but the mortgagee, unless he has assented to such an arrangement, may treat both as principal debtors, and may have a personal decree against both." (Footnotes omitted)

### COOK WAS RELEASED BY AMERICAN STATES' DISCHARGE OF McINTIRE

In *Lutz* v. *Frick Co.* (1962) 242 Ind. 599, 181 N. E. 2d 14, cited by the primary opinion herein, the highest court of this state held that release of a principal obligor by the creditor discharges the surety. As stated therein:

". . . any binding change in the principal's contract to which the guarantor or surety does not consent will discharge the latter from liability." 242 Ind. 599, 602.

Although the factual situation in *Lutz* is distinguishable from the instant case, the distinction is without legal effect.

The holding in *Lutz* has since been codified under the Uniform Commercial Code adopted in this state as IC 1971, 26-1-3-606, being Ind. Ann. Stat. § 19-3-606 (Burns 1964), which provides, *inter alia:*

> "Impairment of recourse or of collateral.— (1) The *holder discharges* any party to the instrument to the extent that without such party's consent the holder
>
> "(a) without express reservation of rights *releases or agrees not to sue* any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or *otherwise discharges such person* except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or
>
> "(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." (Emphasis supplied)

Although the Uniform Commercial Code was not in effect at the time the conveyance from McIntire to American States' trustee took place, the subsequent enactment into positive law of the *Lutz* principle renders the latter pronouncement clearly persuasive.

The Indiana comments accompanying the annotated text of the Uniform Commercial Code provision state that a surety may be discharged when there is a binding agreement between a creditor and a principal without reservation of rights that, among other things, either the creditor will not sue the principal or the creditor agrees to discharge the principal *in some other way.* It should be made clear that the principal-surety relationship referred to here is that which runs from Cook to McIntire, not from Cook to American States. As stated, regarding the latter relationship, no suretyship exists. In terms of American States' relationship with McIntire, we

may not infer the existence of a so-called "binding" agreement. Such inference would be necessary in order to fit the facts here within the requirements of the statutory language above because the dismissal of American States' foreclosure action against McIntire does not in itself constitute such a binding release or discharge or agreement not to sue.

The question remains, therefore, whether McIntire's quitclaim deed to the trustee for American States constitutes a discharge under the "or otherwise" provision stated above. If so, Cook would similarly be relieved of his liability as principal obligor to American States.

It is my view of the law that McIntire's quitclaim deed to Mark Gray, Trustee for American States, for $1.00 and "other valuable consideration," which caused American States to dismiss the pending lawsuit against McIntire, discharged McIntire's liability to American States by operation of law. In support of this, it is well settled that intention of the parties, absent an express agreement, is evidenced by their actions, the surrounding circumstances, and implications. *Indianapolis Real Estate Board v. Wilson* (1933) 98 Ind. App. 72, 187 N. E. 400. Therefore, the dismissal of the lawsuit against McIntire coupled with the rendering of the quitclaim deed for consideration can be construed *prima facie* as one act. Manifestly, a binding agreement resulted which discharged McIntire from further liability. This, in turn, was sufficient to discharge Cook. IC 1971, 26-1-3-606, *supra.*

## NO MERGER TOOK PLACE BY THE ACCEPTANCE OF THE DEED FROM McINTIRE

It is unnecessary to the result herein reached to determine whether the legal and equitable titles to the land in question merged upon transfer to American States' trustee. However, because the primary opinion purports to overrule longstanding Indiana law on this point, I respectfully submit that my colleagues err in attempting to do so. Appellee correctly points

to *Chase et al. v. Van Meter* (1894) 140 Ind. 321, 333, 39 N. E. 455, as enunciating the law of this state:

"The true test of merger is the intention of the party, either expressed or implied. If the intention has not been expressed it will be sought for and ascertained in all the circumstances of the transaction. *If it appears from all the circumstances to be for the benefit of the party acquiring both interests, that merger shall not take place,* but that the equitable or lesser estate shall be kept alive, *then his intention that such a result will follow will be presumed and equity will carry it into execution by preventing a merger.* If, from all the circumstances, a merger would be disadvantageous to the party, then his intention that it should not result will be presumed." (Emphasis supplied)

As clearly stated in *Chase,* if a merger would be disadvantageous to the party acquiring both interests, then no merger will take place.

It is not the province of this court to overrule the settled law articulated in *Chase, supra.* For this reason, I disagree with my colleagues' attempt to overrule this authority, no matter how well intentioned and "equitable" such action may appear. Moreover, as indicated earlier, this point is not essential to the result reached in the primary opinion. To hold that Cook was discharged by operation of law, we need only consider the legal effect of the quitclaim from McIntire to American States' trustee, Gray, coupled with American States' dismissal of the lawsuit against McIntire. This is sufficient under the law of the State of Indiana to support the conclusion that Cook is no longer liable to American States, and is the sole basis of my concurrence.

Buchanan, J., concurs.

NOTE.—Reported in 275 N. E. 2d 832.