**FILED**

Jul 21 2016, 9:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Rudolph Wm. Savich
Bloomington, Indiana

ATTORNEYS FOR APPELLEE,
REGIONS BANK

Libby Y. Goodnight
Kay Dee Baird
Lauren C. Sorrell
Kreig DeVault, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
JENNER PROPERTIES, LLC

Edward McCrea
McCrea & McCrea
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Manee Edler,

*Appellant-Defendant,*

v.

Regions Bank,

*Appellee-Plaintiff*, and

Jenner Properties, LLC,

*Appellee-Intervenor.*

July 21, 2016

Court of Appeals Cause No.
53A01-1512-MF-2264

Appeal from the Monroe Circuit
Court

The Honorable E. Michael Hoff,
Judge

Trial Court Cause No.
53C01-1306-MF-1096

**Barnes, Judge.**

# Case Summary

Manee Edler appeals the denial of her motion to correct error, which sought to set aside the payment of mortgage foreclosure surplus proceeds to Regions Bank ("Regions"). We reverse and remand.

# Issue

The sole issue we address is whether the trial court's disbursement of the foreclosure sheriffs' sale surplus proceeds complied with applicable statutes.

# Facts

Edler and her now-deceased husband, John,[1] owned a house in Bloomington. Regions held both a first mortgage on the property, securing the Edlers' promissory note executed in 2003 for a principal amount of $95,250.00, and a second mortgage, related to a home equity line of credit with a limit of $30,000.00. After John developed cancer, the Edlers fell behind on both mortgage payments. On June 7, 2013, Regions filed a complaint to foreclose the second mortgage only, alleging the Edlers were in default on it and had an outstanding balance of $22,933.56. The foreclosure complaint mentioned the

---

[1] John passed away on September 9, 2015.

first mortgage but did not allege the Edlers were in default or list any outstanding balance thereon.

[4] On December 20, 2013, the trial court entered a judgment and decree of foreclosure. The total judgment amount was $27,160.32. The decree also stated "that the second mortgagee lien of the plaintiff is superior to all other liens and claims of the defendants, except the first mortgage lien of Regions Bank . . . ." App. p. 40. The decree further directed that the property be sold by the sheriff and that after the sale, "a proper deed or deeds be issued according to law to the purchaser or purchasers at such sale or sales; subject to the first mortgage lien of Regions Bank . . . ." *Id.* at 41. The foreclosure decree did not state that the Edlers were in default on the first mortgage or mention any amount due under that instrument or accompanying promissory note. The decree concluded in part:

> That the proceeds of such sale shall be applied first to the costs of this action, next to the payment of real estate taxes due and owing at the time of sale and the amount of redemption in the event the parcel has been sold at tax sale, before deed to the tax sale purchaser, next to the payment of the amount due plaintiff on the judgment rendered herein in its favor, and the balance, if any, to be paid to the Clerk of the Court, subject to further Order of the Court.

*Id.*

[5] John filed for bankruptcy in April 2014, which automatically stayed the foreclosure proceedings, but the bankruptcy court lifted the stay with respect to

selling the property. On November 21, 2014, Jenner Properties, LLC ("Jenner") purchased the property at a sheriff's sale for $82,600.00. Jenner's owner, David Jenner, later claimed he was unaware of the outstanding first mortgage held by Regions when he purchased the property. The sheriff's deed issued to Jenner reflected that the property was subject to the first mortgage. After purchasing the property, Jenner invested approximately $100,000.00 in renovating the property and reached an agreement to sell it to a third party for $199,000.00.

[6] On March 12, 2015, Regions filed a petition for disbursement of the foreclosure sale proceeds. First, Regions sought $31,539.50 to satisfy the foreclosure judgment on the second mortgage. Second, Regions also requested "that the Court disburse the excess sale proceeds in the amount of $51,060.50 as payment toward the amount due and owing Regions Bank pursuant to the first mortgage dated April 21, 2003." *Id.* at 44. With this petition, Regions submitted documentation related to the first mortgage showing that it had a current payoff amount of $60,327.93. On March 17, 2015, the trial court ordered the full $82,600.00 from the sheriff's sale disbursed to Regions. On March 31, 2015, Jenner agreed to pay $3,457.82 to Regions in exchange for its release of the first mortgage from the property.

[7] On April 16, 2015, the Edlers filed a motion to correct error. In it, the Edlers argued it was erroneous for the trial court to disburse the $51,060.50 foreclosure surplus to Regions because the second mortgage foreclosure judgment and sheriff's sale were specifically made subject to the first mortgage. The Edlers

argued that the surplus should have been released to them instead. After conducting a hearing on the matter, the trial court denied the Edlers' motion. Manee now appeals; both Regions and Jenner have filed appellee's briefs.

## Analysis

[8] When reviewing denial of a motion to correct error, we review the trial court's ruling for an abuse of discretion. *Old Utica Sch. Pres., Inc. v. Utica Twp.*, 7 N.E.3d 327, 330 (Ind. Ct. App. 2014), *trans. denied*. "An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it or the reasonable inferences therefrom." *Id.* A trial court also abuses its discretion in making a ruling if it has misinterpreted the law. *Kosarko v. Padula*, 979 N.E.2d 144, 146 (Ind. 2012).

[9] Manee argues that because the foreclosure decree and subsequent sheriff's sale of the property were clear that the property was being sold "subject to" Regions's first mortgage, the surplus proceeds from that sale could not be used to partially pay off the first mortgage. Manee relies in part upon *Cook v. American States Insurance Co.*, 150 Ind. App. 88, 95, 275 N.E.2d 832, 836 (1971), which held that, "whether the purchaser assumes the payment of a prior mortgage or the purchaser buys merely subject to such mortgage, that in each case the purchaser takes the land charged with the payment of the debt." Moreover, the general rule is that, if a purchaser merely buys land subject to a mortgage and does not assume the mortgage, the buyer is not subject to personal liability for payment of the debt secured by the mortgage; rather, the

land itself "is the primary fund out of which the debt is payable." *Springer v. Foster*, 27 Ind. App. 15, 20, 60 N.E. 720, 722 (1901); *see also First Fed. Sav. & Loan Ass'n of Gary v. Arena*, 406 N.E.2d 1279, 1284 (Ind. Ct. App. 1980). Regions and Jenner respond that cases such as *Cook*, *Springer*, and *Arena* are not controlling or are distinguishable and that the trial court had the equitable discretion to order disbursement of the surplus foreclosure funds to Regions to go towards payment of the first mortgage.

[10] None of the parties has discussed the relevant statutes and case law governing mortgage foreclosures. Although not cited by Manee, we cannot ignore the statutes governing mortgage foreclosure sales and surplus sales proceeds. First, Indiana Code Section 32-29-7-9(b) provides that if property is sold at a sheriff's foreclosure sale, "the sheriff shall pay the proceeds as provided in IC 32-30-10-14." Indiana Code Section 32-30-10-14 in turn provides:

> The proceeds of a sale described in IC 32-29-7 or section 8 or 12(b) of this chapter *must* be applied in the following order:
>
> (1) Expenses of the offer and sale, including expenses incurred under IC 32-29-7-4 or section 9 of this chapter (or IC 34-1-53-6.5 or IC 32-15-6-6.5 before their repeal).
>
> (2) The payment of the principal due, interest, and costs not described in subdivision (1).
>
> (3) The residue secured by the mortgage and not due.

(4) If the residue referred to in subdivision (3) does not bear interest, a deduction must be made by discounting the legal interest.

In all cases in which the proceeds of sale exceed the amounts described in subdivisions (1) through (4), the surplus must be paid to the clerk of the court to be transferred, as the court directs, *to the mortgage debtor, mortgage debtor's heirs, or other persons assigned by the mortgage debtor*.

(Emphases added).[2]  Foreclosures must follow statutory procedures, including those related to the payment of sheriff's sale surpluses. *Patterson v. Grace*, 661 N.E.2d 580, 586 (Ind. Ct. App. 1996).  Although equity greatly influences foreclosure proceedings, trial courts are not free to deviate from clear statutory procedures, including those set forth in Indiana Code Section 32-30-10-14. *First Fed. Sav. Bank v. Hartley*, 799 N.E.2d 36, 40 (Ind. Ct. App. 2003).

[11]  In addition to these statutes, we note that generally, when a property lienholder is not made a party to a foreclosure suit and is not bound by the foreclosure, a foreclosure sale purchaser "simply step[s] into the shoes of the original holder of the real estate and [takes] such owners' interest subject to all existing liens and claims against it." *Watson v. Strohl*, 220 Ind. 672, 687, 46 N.E.2d 204, 210 (1943).  More to the point for purposes of this case, it is long-settled Indiana law that, "[l]ienholders whose rights have not been adjudged or foreclosed in the

---

[2] Prior to July 1, 2010, this statute required payment of outstanding property taxes and of any amount of redemption where a certificate of sale is outstanding, before payment of the foreclosed mortgage principal and interest.  Those provisions are now repealed.  *See* P.L. 73-2010 § 9 (eff. July 1, 2010).

foreclosure action *have no right to share in the proceeds of the sale*." 20 IND. LAW ENCYC. Mortgages § 175 (citing *McKernan v. Neff*, 43 Ind. 503 (1873)) (emphasis added). In *McKernan*, there were three mortgages on a property. The most-senior mortgagee filed a foreclosure suit, in which the most-junior mortgagee was joined; the middle mortgagee was not. After sheriff's sale of the property, the most-senior and most-junior mortgages were paid. The middle mortgagee filed suit, seeking entitlement to some of the sheriff's sale proceeds. Our supreme court, noting that the foreclosure sale did not cut off the middle mortgagee's own right of foreclosure, held that the middle mortgagee was not entitled to any of the sheriff's sale proceeds. *McKernan*, 43 Ind. at 506-07.

[12]   Also instructive here is *Firestone v. State ex rel. Liggett*, 100 Ind. 226 (1884). In that case, Liggett sold property to Firestone, and Firestone assumed a mortgage Liggett had previously taken out. Firestone also executed a second mortgage on the property in favor of Liggett, junior to the mortgage originally executed by Liggett and assumed by Firestone. The senior mortgagee filed a foreclosure action against both Firestone and Liggett after Firestone failed to pay on it; Liggett made a partial payment on the senior mortgage and obtained dismissal of that foreclosure action. Liggett then filed his own foreclosure action against Firestone for default on the junior mortgage. A decree of foreclosure was entered, the property was sold by the sheriff, and the junior mortgage was paid off. A surplus remained after that payment was made. Liggett sought recovery of the surplus based on his partial payment towards the senior mortgage; there did not seem to be any dispute that Liggett made this payment. Our supreme

court held Liggett was not entitled to the surplus, based on the plain language of the statute, then as now, providing for payment of any sheriff's sale surplus to the mortgage debtor, or the debtor's heirs or assigns. *Firestone*, 100 Ind. at 229. The court disapproved of Liggett's attempt to effectively seek foreclosure of the senior mortgage upon the surplus fund, as opposed to foreclosure upon the land itself. *Id.*

[13] This case is slightly unusual in that Regions obviously had notice of the foreclosure action on the second mortgage but chose to make no effort to foreclose on the first mortgage or otherwise have its rights adjudicated with respect to the first mortgage.[3] Having chosen this course of action, Regions could not essentially reverse course by seeking the surplus sales proceeds, in clear contravention of the foreclosure statutes and relevant case law. In essence, Regions attempted to foreclose on the first mortgage without following the procedures for such a foreclosure. Under the plain language of the statute and long-standing case law, the Edlers as mortgage debtors clearly were entitled to the sheriff's sale surplus after satisfaction of the foreclosure judgment on the second mortgage only.[4] The trial court did not have discretion to rule

---

[3] Why Regions did not attempt to seek final adjudication of its rights under the first mortgage during the foreclosure proceedings, we do not know. It may have been a strategic decision or a case of the left hand not knowing what the right hand was doing; argument by counsel at the motion to correct error hearing suggests it was the latter. Also, because Regions was not "omitted" from the original foreclosure action, it would not seem to fit the definition of an "omitted party" under the strict foreclosure statute enacted by our legislature in 2012. *See* I.C. § 32-29-8-4(b).

[4] There is no evidence the Edlers assigned their interest in the surplus to anyone.

otherwise, in contravention of law and in the name of "equity." *See Hartley*, 799 N.E.2d at 40.

[14] How Regions now decides to collect the debt associated with that mortgage is beyond the scope of this opinion, although its rights with respect to the first mortgage did not seem to be terminated by foreclosure of the second mortgage, given that the sheriff's sale and subsequent deed were made "subject to" the first mortgage.[5] *See Watson*, 220 Ind. at 687, 46 N.E.2d at 210; *see also English v. Aldrich*, 132 Ind. 500, 506, 31 N.E. 456, 458 (1892). Regions and Jenner also suggest it would be "inefficient" not to allow Regions to retain the sheriff's sale surplus to put towards the first mortgage and instead to force it to seek other collection avenues for that debt, including a possible second foreclosure proceeding. We would respond that indeed, it would have been more efficient for both the first and second mortgages to be resolved in one proceeding, but Regions elected not to seek such resolution. Our supreme court observed long ago:

> One of the leading purposes of a suit to foreclose a mortgage is to secure such a decree as will enable the plaintiff to sell all the right and title that his mortgage covers, and enable a purchaser at the sale to ascertain what title it is that he buys. To attain this end it is necessary that all the claims held against the mortgaged premises should be adjusted in one suit. This the spirit of our Code requires, for it makes ample provision for bringing all the interested parties into court, and for adjusting all conflicting

---

[5] Additionally, we offer no opinion as to the effect of our holding today on Regions's agreement with Jenner to release the first mortgage, or the pending sale of the property by Jenner to a third party.

claims and equities. The rule is a salutary one. It tends to repress litigation, gives confidence in public records, secures respect for judgments and decrees, and invests sheriff's sales with strength and certainty that does much to promote the interests of both debtor and creditor.

*Craighead v. Dalton*, 105 Ind. 72, 73, 4 N.E. 425, 426 (1886).

## Conclusion

The trial court misinterpreted or misapplied the law regarding disbursement of surplus sale proceeds following a sheriff's foreclosure sale. As such, it abused its discretion in denying the Edlers' motion to correct error. We reverse the denial of that motion and remand with instructions that the surplus sale proceeds be disbursed to Manee.

Reversed and remanded.

Vaidik, C.J., and Mathias, J., concur.