
FILED

Aug 27 2025, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Susan Sanders,

*Appellant-Defendant*

v.

US Bank Trust National Association, as Trustee, for ABS Loan Trust VI,

*Appellee-Plaintiff*

---

August 27, 2025

Court of Appeals Case No.
24A-MF-1265

Appeal from the Henry Circuit Court

The Honorable Bob A. Witham, Judge

Trial Court Cause No.
33C01-2206-MF-44

---

**Opinion by Judge Pyle**
Judges Weissmann and Felix concur.

**Pyle, Judge.**

## Statement of the Case

Susan Sanders ("Sanders") appeals the trial court's order granting summary judgment to US Bank Trust National Association, as Trustee, for ABS Loan Trust VI ("ABS"). Sanders argues that the trial court erred by granting ABS' summary judgment motion. Concluding that the trial court did not err, we affirm the trial court's judgment.

We affirm.

## Issue

> Whether the trial court erred by granting ABS' summary judgment motion.

## Facts

This case involves real estate located at 5289 North Raider Road in Middletown, Indiana ("the Property"). In August 2003, Sanders executed a mortgage on the Property for $131,000 ("the first mortgage"), and this first mortgage was later assigned to US Bank Trust National Association, not in its individual capacity but solely as Trustee, for RCF 2 Acquisition ("RCF"). In September 2004, Sanders executed a second mortgage on the Property for $44,000 ("the second mortgage"), and this second mortgage was later assigned to ABS.

[4]     In June 2018, Sanders and her husband ("Sanders' husband") filed, with the U.S. Bankruptcy Court, a petition for Chapter 12 bankruptcy protection. Three and one-half years later, in January 2022, the Bankruptcy Court entered an agreed entry approving ABS' motion for relief from the bankruptcy stay and for abandonment of real estate from Sanders' bankruptcy estate ("the bankruptcy agreed entry"). As set forth in the bankruptcy agreed entry, the parties had "stipulate[d] and agree[d]" that ABS should have "relief from stay and abandonment of the property so that [ABS could] initiate a foreclosure action on the subject real estate." (App. Vol. 2 at 214). The agreed entry also specified that ABS would "limit its judgment in the foreclosure action to an *in rem* judgment[.]" (App. Vol. 2 at 214).

[5]     In June 2022, ABS filed a "Complaint on Note and for Foreclosure of Mortgage and for Reformation of Legal Description" ("ABS' complaint"), in which ABS sought to foreclose on the second mortgage and sought an *in rem* judgment. (App. Vol. 2 at 29). ABS included the note, mortgage, and assignment of the mortgage and attached it to the complaint. ABS' complaint explained that the original note on the second mortgage was for $44,000 and that "the outstanding unpaid principal balance" due was "$31,695.78, which continue[d] to accrue interest[.]" (App. Vol. 2 at 32). ABS filed its complaint against Sanders, RCF, and other parties who may have had an interest in the Property. In the complaint, ABS acknowledged that RCF had the first mortgage that appeared to be superior to ABS' interest. As part of ABS' complaint, ABS requested the trial court to declare ABS' second mortgage to be

superior to all other defendants, enter an *in rem* judgment, foreclose on the second mortgage, and enter an order directing the sale of the Property to pay the amount due to ABS.

[6] Thereafter, in August 2022, RCF filed an answer to ABS' complaint and asserted that RCF had the first mortgage and that its lien was superior to ABS' lien. RCF also filed an "*In Rem* Counterclaim and Crossclaim Complaint for Foreclosure of Note and Mortgage" ("RCF's counterclaim/crossclaim"). (App. Vol. 2 at 67) (italics added). RCF filed the counterclaim against ABS and filed the crossclaim against Sanders and the other defendants listed in ABS' complaint. RCF explained that the original note on the first mortgage was for $131,000 and that the principal balance due was $93,704.96 plus accrued interest. In RCF's counterclaim/crossclaim, it requested the trial court to declare RCF's first mortgage to be superior to all defendants, enter an *in rem* judgment, foreclose on the first mortgage, and enter an order directing the sale of the Property to pay the amount due to RCF.

[7] Sanders did not file an answer to ABS' complaint. Additionally, Sanders did not file an answer to RCF's crossclaim.

[8] On March 15, 2023, RCF filed an "Agreed Motion for Entry of *In Rem* Judgment and Decree of Foreclosure" ("the agreed motion"). (App. Vol. 2 at

107) (italics added).  That same day, ABS filed a consent to the agreed motion.[1]
As part of RCF's motion, RCF attached an affidavit of debt setting forth the
amount it sought to recover, which was $166,733.67 and included the amount
of the first mortgage, interest, attorney fees, and expenses.  RCF requested the
trial court to declare RCF's first mortgage to be superior to all defendants, enter
an *in rem* judgment and decree of foreclosure, and enter an order directing for
the sale of the Property to pay to satisfy the amount due to RCF.

[9]     On March 16, 2023, the trial court entered an order entitled "Entry of *In Rem*
Judgment and Decree of Foreclosure" ("March 2023 Order").  (App. Vol. 2 at
111) (emphasis added).  The trial court entered default judgment against
Sanders and the other defendants who had failed to appear and to file a
responsive pleading.  In the March 2023 Order, the trial court determined that
RCF had a valid lien against the Property and that ABS had a valid lien against
the Property that was subordinate to RCF's lien.  The trial court awarded RCF
an *in rem* judgment for $166,733.67 and ordered that RCF's first mortgage was
foreclosed.  Additionally, the trial court explained that the equity of redemption
of all defendants was foreclosed with respect to the Property.  The trial court
ordered that the Property would be sold at a sheriff's sale to satisfy the amount
due to RCF.  The trial court then ordered that the proceeds of the sheriff's sale
would be applied in the following order:  (1) costs of the action; (2) payment of

---

[1] Defendant/Crossclaim Defendant, Farm Credit Mid-America, PCA ("Farm-Credit") also filed a consent to
the agreed motion.  Farm-Credit had had a personal judgment against Sanders and her husband.

property taxes due on the Property; (3) payment of sums due to RCF; (4) payment of sums due to ABS "as its interest may be proven upon further application to the Court[;]" (5) payment of sums due to Farm-Credit as could later be proven to the trial court; and (6) "if any proceeds remain, to the Clerk of this Court for the benefit of the parties and subject to further order of the Court[.]" (App. Vol. 2 at 115). The trial court entered its March 2023 Order as a final judgment.

[10] Sanders did not file a direct appeal from the March 2023 Judgment. She also did not file a motion for relief from default judgment.

[11] On March 21, 2023, RCF filed a praecipe for an order for a sheriff's sale, and the trial court issued a praecipe. On June 8, 2023, the county sheriff sold the Property at a public auction, and Sanders' husband purchased the Property for $215,244.69.

[12] Thereafter, on June 21, 2023, RCF filed a motion to release funds. In its motion, RCF sought to have the trial court enter an order for the clerk of the court to release funds from the sheriff sale of the Property. Specifically, RCF sought $173,835.40, which included RCF's judgment of $166,733.67 plus interest, costs, and fees.

[13] On June 26, 2023, the trial court entered an order granting RCF's motion, and the trial court ordered the clerk to release the requested funds to RCF. After the release of funds to RCF, the balance of funds remaining in the clerk's possession totaled $41,409.29.

[14] On June 27, 2023, the bankruptcy court entered an order of discharge in Sanders' bankruptcy case ("the bankruptcy discharge order"). The bankruptcy discharge order provided that creditors could not collect discharged debts, and it stated that "[m]ost debts [we]re covered by the discharge[] but not all." (App. Vol. 2 at 229). The bankruptcy discharge order also explained that "a creditor with a lien [could] enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated." (App. Vol. 2 at 229).

[15] On July 10, 2023, ABS filed a motion to freeze the remaining $41,409.29 sheriff sale proceeds that were being held by the clerk ("motion to freeze funds"). In its motion, ABS stated that, pursuant to the trial court's March 2023 Order, ABS was entitled to be paid from the sheriff sale proceeds for the amounts due under ABS' second mortgage. ABS asserted that it was in the process of preparing an affidavit of debt setting forth the amount due to ABS. The following day, the trial court granted ABS' motion to freeze the remaining $41,409.29 "until further application [wa]s made by" ABS. (App. Vol. 2 at 136).

[16] Also on July 11, 2023, Sanders entered an appearance and filed a "Motion to Distribute Surplus Proceeds" ("Sanders' motion for proceeds"), in which Sanders requested the trial court to order the clerk of court to release the remaining $41,409.29 sheriff sale proceeds to her. (App. Vol. 2 at 137). Sanders acknowledged the filing of ABS' complaint filed in June 2022 and the entry of the trial court's March 2023 Order. Sanders, however, asserted that ABS did not have a judgment against her in this proceeding and that ABS was

now precluded from obtaining any such judgment due to the bankruptcy discharge order. She further asserted that "any liability formerly owed by Sanders to ABS . . . had been fully satisfied." (App. Vol. 2 at 140). Additionally, Sanders argued that any *in personam* liability owed by her to ABS had been forgiven in the bankruptcy agreed entry and discharged by the bankruptcy discharge order. Sanders also threatened that she would "seek redress with the Bankruptcy Court for [ABS'] willful violation of the bankruptcy discharge injunction for filing of the Motion to Freeze unless [that motion] [wa]s promptly withdrawn." (App. Vol. 2 at 139).

[17] ABS filed a response to Sanders' motion for proceeds and asserted that Sanders' motion should be denied. ABS asserted that, pursuant to the March 2023 Order, ABS was entitled to payment for its valid lien on the Property as contained in the second mortgage and that ABS had priority over Sanders to the remaining proceeds. ABS also rejected Sanders' assertion that ABS was seeking an *in personam* judgment against her, and ABS asserted that it had sought an *in rem* judgment against the Property based on ABS' mortgage lien and consistent with Sanders' and ABS' agreement as contained in the bankruptcy agreed entry. ABS also noted that it was in the process of filing its motion for summary judgment with the final amount due on its *in rem* claim as the trial court had provided for in its March 2023 Judgment.

[18] Thereafter, in August 2023, ABS filed a motion for *in rem* summary judgment and attached an affidavit of debt that set forth the amount that was due and owing to ABS. The amount due totaled $48,437.40, which included the

balance of the second mortgage, interest, attorney fees, and expenses. To satisfy the amount due, ABS sought to obtain the $41,409.29 that remained from the sheriff sale of the Property. ABS asserted that its presentation of evidence, including the note and mortgage, Sanders' default thereon, and the amount of the second mortgage debt was sufficient to support the entry of the *in rem* summary judgment in ABS' favor. Additionally, ABS argued that, consistent with the March 2023 Order's explanation of the priority of lienholder payments from the sheriff sale, it was entitled to the distribution of the remaining sheriff sale proceeds.

[19] Sanders then filed a response to ABS' summary judgment motion. She also filed a cross-motion for summary judgment and asked the trial court to order the disbursement of the remaining sheriff sale proceeds of $41,409.29 to her. In Sanders' summary judgment memorandum, she acknowledged that the facts were undisputed. Sanders asserted that the only issue in dispute was whether ABS or Sanders was entitled to the remaining $41,409.29 of proceeds from the sheriff sale of the Property. She argued that ABS was not entitled to the sheriff sale proceeds because ABS had failed to obtain an *in rem* judgment against the Property *prior to* the sheriff sale and because the March 2023 Order did not specifically provide that ABS' lien attached to the proceeds of the sheriff sale. Sanders asserted that, as a result, ABS' lien had been extinguished by the sheriff sale. She reasoned that, because ABS' lien had been extinguished by the sale and did not attach to the sale proceeds, she was entitled to the remaining sheriff sale proceeds as surplus under INDIANA CODE § 32-30-10-14.

[20]     Sanders also argued that ABS' attempt to obtain the remaining proceeds of the sheriff sale amounted to an attempt to obtain an improper *in personam* claim against her. According to Sanders' summary judgment memorandum, she had already challenged, in the bankruptcy court, ABS' attempt to obtain the remaining sheriff sale proceeds as being an improper *in personam* claim. Specifically, after ABS had filed its motion to freeze funds, Sanders filed, in the bankruptcy court, a motion for contempt.[2] In Sanders' contempt motion, she asserted that ABS had violated the bankruptcy discharge injunction by seeking to obtain the remaining proceeds of the sheriff sale. Sanders' assertion was based on her argument that the remaining proceeds of the sheriff sale belonged to her. According to Sanders, the bankruptcy court held a hearing and then issued an order, explaining that ABS had had "an objectively reasonable basis for its conduct" and that the "entry of an order of contempt was not warranted." (App. Vol. 2 at 183).

[21]     The trial court held a summary judgment hearing in March 2024. Thereafter, the trial court entered an order granting ABS' motion for *in rem* summary judgment ("the Appealed Order"). Specifically, the trial court granted ABS an *in rem* judgment of $48,437.40 and ordered the clerk of the court to distribute the remaining $41,409.29 of sheriff sale proceeds to ABS. The trial court concluded that "in accordance with the Court's prior [March 2023 Order], the

---

[2] In Sanders' memorandum, she recounted the details of her motion for contempt and the bankruptcy court's order on her motion, but she did not include those documents in her designated evidence.

*in rem* judgment granted in favor of [ABS] herein attaches to the proceeds of the June 8, 2023 sale of the [Property] remaining after payment to RCF[.]" (App. Vol. 2 at 26). The trial court also explained that ABS' "interest in said proceeds is a first-priority interest superior to any interest held by Defendants[,]" which included Sanders. (App. Vol. 2 at 26).

[22] Sanders now appeals.

## Decision

[23] Sanders argues that the trial court erred by granting ABS' summary judgment motion. Specifically, she contends that the Appealed Order does not comply with INDIANA CODE § 32-30-10-14. The ultimate issue in this appeal is which party was entitled to the remaining sheriff sale proceeds. Sanders argues that, under INDIANA CODE § 32-30-10-14, ABS was not entitled to those remaining proceeds and that the proceeds should have, instead, been distributed to her. The crux of Sanders' argument is that the timing of ABS' filing of its summary judgment motion and affidavit of debt was "too late" for ABS to adjudge its lien rights because ABS' "mortgage [lien] and claim based thereon was extinguished at the Sheriff's Sale" and did not attach to the sheriff sale proceeds. (Sanders' Br. 15).

[24] Our standard of review for summary judgment cases is well-settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the

moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). A trial court's grant of summary judgment is "clothed with a presumption of validity," and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (cleaned up). Where, as here, the dispute is one of law rather than fact, our standard of review is de novo. *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015).

[25] We note that this case involves the interpretation of INDIANA CODE § 32-30-10-14. The interpretation of a statutory provision is a question of law, which we review de novo. *Beneficial Indiana, Inc. v. Joy Properties, LLC*, 942 N.E.2d 889, 892 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. "As we consider this question of law in the matter before us, however, we are mindful of our [Indiana] Supreme Court's admonition to 'give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice.'" *Id.* (quoting *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005)).

[26] Before we review the trial court's summary judgment order, we pause here to note that this appeal stems from a mortgage foreclosure proceeding involving a determination of the rights of multiple mortgage lienholders, and we find it helpful to provide a brief overview of relevant law in regard to such a proceeding. "'A mortgage is an interest in real property that secures a creditor's right to repayment.'" *U.S. Bank Tr. Nat'l Ass'n as Tr. of Am. Homeowner Pres. Tr.*

*Series 2015 A+ v. Dugger*, 193 N.E.3d 1015, 1019-20 (Ind. Ct. App. 2022) (quoting *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 827 (Ind. 2017)) (internal quotation marks omitted). INDIANA CODE § 32-30-10-3(a) provides that "if a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assigns may proceed in the . . . court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage." "[A]n action to foreclose a mortgage is an *in rem* (i.e., against the property) proceeding." *U.S. Bank*, 193 N.E.3d at 1020 (citing *Dipert v. Killingbeck*, 112 N.E.2d 306 (Ind. Ct. App. 1953), *reh'g denied*; 20 Ind. Law Encyc. Mortgages § 149 (2022)).

[27]     "Generally, [a trial] court in a foreclosure action . . . has the authority not only to adjudicate all issues between the mortgagor and the mortgagee but also to determine the priority, validity, and extent of the claims of all other parties to the action." 20 Ind. Law Encyc. Mortgages § 138 (2025) (citing *Quill v. Gallivan*, 9 N.E. 99 (Ind. 1886); *Luken v. Fickle*, 84 N.E. 561 (Ind. Ct. App. 1908)). *See also Adair v. Mergentheim*, 16 N.E. 603, 604 (Ind. 1888) (explaining that "it has long been settled by the decisions in this state that conflicting claims and questions of priority may be determined in foreclosure suits, whenever proper issues to that end are tendered."). In *Quill*, our supreme court explained that "[i]f the parties interested in the land are all properly in court, no matter whether brought in by the original complaint or by cross-complaint, the court may settle and adjudicate all conflicting claims and equities." *Quill*, 9 N.E. at 99. "The court in which [a] foreclosure action is pending has jurisdiction to

determine the parties entitled to share in the distribution of the proceeds of the foreclosure sale and direct their distribution accordingly[,]" and "it also has jurisdiction to direct the distribution of the surplus proceeds of the sale among those entitled to them." 20 Ind. Law Encyc. Mortgages § 179 (citing *Harris v. United States Sav. Fund & Inv. Co.*, 45 N.E. 328 (Ind. 1896); *Hutchinson v. First Nat. Bank*, 30 N.E. 952 (Ind. 1892)).

[28] We now turn back to our review of the trial court's summary judgment order. Sanders and ABS agree that the facts in this case are undisputed. Those undisputed facts include the following: ABS had a valid second mortgage; Sanders defaulted on her obligation to make monthly payments on the loan secured by the second mortgage; Sanders filed for bankruptcy and then agreed that ABS could have relief from the bankruptcy stay in order to seek a foreclosure action on the Property and to obtain an *in rem* judgment; ABS filed its *in rem* complaint for foreclosure of its second mortgage; RCF filed an *in rem* counterclaim and crossclaim complaint for foreclosure of its first mortgage; RCF filed for and ABS consented to an *in rem* judgment; the trial court entered the March 2023 Order, in which it entered a default judgment against Sanders, granted an *in rem* judgment to RCF, determined that ABS had a valid lien against the Property that was subordinate to RCF's lien, ordered that the

Property would be sold at a sheriff's sale, and specifically set forth the priority for how the sheriff sale proceeds would be distributed.[3]

[29]     Sanders and ABS also agree that the trial court was required to follow INDIANA CODE § 32-30-10-14 when entering an order for the distribution of the sheriff sale proceeds. Indeed, we have explained that "[f]oreclosures must follow statutory procedures, including those related to the payment of sheriff's sale surpluses." *Edler v. Regions Bank*, 60 N.E.3d 288, 291 (Ind. Ct. App. 2016). "Although equity greatly influences foreclosure proceedings, trial courts are not free to deviate from clear statutory procedures, including those set forth in Indiana Code Section 32-30-10-14." *Id.* at 291-92.

[30]     INDIANA CODE § 32-30-10-14 provides as follows:

> The proceeds of a sale described in IC 32-29-7 or section 8 or 12(b) of this chapter must be applied in the following order:
>
> > (1) Expenses of the offer and sale, including expenses incurred under IC 32-29-7-4 or section 9 of this chapter (or IC 34-1-53-6.5 or IC 32-15-6-6.5 before their repeal).

---

[3] We pause to note that Sanders did not appeal the March 2023 Order and that the propriety of the trial court's judgment within the March 2023 Order (determining the validity of ABS' lien and specifically setting forth the order of lienholder priority in relation to the distribution of the sheriff sale proceeds) is not before us on appeal. Instead, that judgment is a "binding decree that is not subject to collateral attack." *See Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1198 (Ind. 2008) (explaining that it was "well-settled" that "where matters in issue between the parties to an action were, or might have been, litigated in a former action, such matters are considered forever at rest") (internal quotation marks and citation omitted), *reh'g denied*.

(2) The payment of the principal due, interest, and costs not described in subdivision (1).

(3) The residue secured by the mortgage and not due.

(4) If the residue referred to in subdivision (3) does not bear interest, a deduction must be made by discounting the legal interest.

In all cases in which the proceeds of sale exceed the amounts described in subdivisions (1) through (4), the surplus must be paid to the clerk of the court to be transferred, as the court directs, to the mortgage debtor, mortgage debtor's heirs, or other persons assigned by the mortgage debtor.

I.C. § 32-30-10-14.[4]

In the trial court's March 2023 Order, it determined the priority of liens for the appearing parties and entered an order for the distribution of the sheriff sale proceeds as follows: (1) costs of the action; (2) payment of property taxes due on the Property; (3) payment of sums due to RCF; (4) payment of sums due to ABS "as its interest may be proven upon further application to the Court[;]" (5) payment of sums due to Farm-Credit as could later be proven to the trial court; and (6) "if any proceeds remain, to the Clerk of this Court for the benefit of the parties and subject to further order of the Court[.]" (App. Vol. 2 at 115). Thus,

---

[4] We note that INDIANA CODE § 32-29-7-9 provides that if "property is sold [at a sheriff sale in a mortgage foreclosure proceeding], the sheriff shall pay the proceeds as provided in IC 32-30-10-14" and that "[e]very sale made under this chapter is made without right of redemption." I.C. § 32-29-7-9.

the March 2023 Order follows the general guidelines of INDIANA CODE § 32-30-10-14.

[32] Indeed, Sanders agrees that the March 2023 Order, in which the trial court ordered that the sheriff sale proceeds would be distributed to ABS after payment to RCF, complies with INDIANA CODE § 32-30-10-14. Sanders asserts that she did not appeal the March 2023 Order because she did not dispute the content of March 2023 Order. Thus, Sanders does not dispute that ABS was entitled to payment for its second mortgage on the Property.

[33] Sanders, however, contends that the Appealed Order, in which the trial court ordered distribution of the remaining sheriff sale proceeds to ABS, does not comply with INDIANA CODE § 32-30-10-14. Sanders seemingly argues that the timing of ABS' filing of its summary judgment motion and affidavit of debt removed ABS from the distribution categories in the statute, thereby precluding ABS from receiving the remaining sheriff sale proceeds. Sanders acknowledges that the March 2023 Order was entered before the sheriff sale, but she contends that the March 2023 Order was not a judgment on ABS' behalf that would allow the trial court to distribute the remaining sheriff sale proceeds to ABS. Sanders asserts that "[i]f the Trial Court had determined ABS['] . . . damages in the [March 2023 Order] entered prior to the Sheriff's Sale, rather than in the Appealed Order, this appeal would have been unnecessary." (Sanders' Reply Br. 7).

[34] Sanders relies on *Edler* to support her argument that ABS was not entitled to a distribution of the remaining sheriff sale proceeds because it did not have its lien rights adjudged. In *Edler*, Regions Bank was the holder of both a first and second mortgage attached to real estate, but it chose to foreclose only on the second mortgage. *Edler*, 60 N.E.3d at 289. After the sheriff's sale, at which the real estate was sold subject to the first mortgage, Regions attempted to collect the remaining or surplus funds to satisfy both mortgages. *Id.* at 290. The *Edler* Court observed:

> Regions obviously had notice of the foreclosure action on the second mortgage but chose to make no effort to foreclose on the first mortgage or otherwise have its rights adjudicated with respect to the first mortgage. Having chosen this course of action, Regions could not essentially reverse course by seeking the surplus sales proceeds, in clear contravention of the foreclosure statutes and relevant case law. In essence, Regions attempted to foreclose on the first mortgage without following the procedures for such a foreclosure.

*Id.* at 292-93. The *Edler* Court explained that "it is long-settled Indiana law that, '[l]ienholders whose rights have not been adjudged or foreclosed in the foreclosure action *have no right to share in the proceeds of the sale.*'" *Edler*, 60 N.E.3d at 292 (quoting 20 Ind. Law Encyc. Mortgages § 175 (citing *McKernan v. Neff,* 43 Ind. 503 (Ind. 1873)) (emphasis added by *Elder*).

[35] The *Edler* Court further explained that, where there are multiple mortgagees, the preference is for mortgagees to resolve their claims in one proceeding.

One of the leading purposes of a suit to foreclose a mortgage is to secure such a decree as will enable the plaintiff to sell all the right and title that his mortgage covers, and enable a purchaser at the sale to ascertain what title it is that he buys. To attain this end it is necessary that all the claims held against the mortgaged premises should be adjusted in one suit. This the spirit of our Code requires, for it makes ample provision for bringing all the interested parties into court, and for adjusting all conflicting claims and equities. The rule is a salutary one. It tends to repress litigation, gives confidence in public records, secures respect for judgments and decrees, and invests sheriff's sales with strength and certainty that does much to promote the interests of both debtor and creditor.

*Edler*, 60 N.E.3d at 293 (quoting *Craighead v. Dalton*, 4 N.E. 425, 426 (Ind. 1886)).

[36]  Unlike *Edler*, here, the mortgagees, ABS and RCF, did indeed resolve their claims in one foreclosure proceeding, and ABS had its rights adjudged in that proceeding. ABS commenced this *in rem* foreclosure action and included all defendants who may have had an interest in the Property. In its complaint, ABS specifically asserted that "the outstanding unpaid principal balance" due at the time of filing the complaint was "$31,695.78, which continue[d] to accrue interest[.]" (App. Vol. 2 at 32). RCF then filed its counterclaim/crossclaim in this case. ABS sought an *in rem* judgment to foreclose on its second mortgage lien, and RCF sought an *in rem* judgment to foreclose on its first mortgage lien. Following RCF's filing of an agreed entry of an *in rem* judgment and decree of foreclosure and ABS' consent thereto, the trial court entered the March 2023 Order. In that order, the trial court entered default judgment against Sanders,

awarded RCF an *in rem* judgment, ordered that RCF's first mortgage was foreclosed, determined that ABS had a valid lien against the Property that was subordinate to RCF's lien, ordered that the Property would be sold at a sheriff's sale, and then determined the order of lienholder priority for the distribution for those sheriff sale proceeds. Relevant to this appeal, the trial court ordered that—following the payment of general costs and taxes and disbursement to RCF to satisfy the sums due on its first mortgage lien—the proceeds of the sheriff sale would then be disbursed to ABS to satisfy the sums due on its second mortgage lien "as its interest may be proven upon further application to the Court[.]" (App. Vol. 2 at 115). Thereafter, ABS filed its summary judgment motion and affidavit of debt as its means of proving its interest to the trial court as directed in the March 2023 Order. Based on the record before us, we conclude that ABS' lienholder rights were clearly adjudged in this foreclosure action, thereby providing ABS with right to share in the proceeds of the sale. *See Edler*, 60 N.E.3d at 292.

[37] Additionally, Sanders argues that ABS was not entitled to the remaining sheriff sale proceeds because ABS' lien on the Property had been extinguished by the sheriff sale. She contends that ABS' lien did not attach to the proceeds of the sheriff sale because INDIANA CODE § 32-30-10-14 contains no provision that the lien would attach to the proceeds and because the March 2023 Order did not specifically state that ABS' lien attached to the proceeds. Our caselaw and legal authority do not support her assertion.

[38] "The proceeds of the sale of the property in an action to foreclose a mortgage on real property are as a general rule applied to extinguish liens on the property in order of their priority as determined by the court." 20 Ind. Law Encyc. Mortgages § 177 (citing *Mueller v. Stinesville & Bloomington Stone Co.*, 56 N.E. 222 (Ind. 1900)). "[W]hen a surplus occurs [following the sale of foreclosed mortgaged property], [the surplus] represents what remains of the equity of redemption and is, as such, a substitute res." Restatement (Third) of Property: (Mortgages) § 7.4 cmt. a. "The surplus stands in the place of the foreclosed real estate, and the liens and interests that previously attached to the real estate now attach to the surplus." *Id.*

[39] "In the contemplation of equity, by the sale of the whole estate, under foreclosure proceedings affecting and binding the junior mortgagee, the land is converted into money, and this fund being treated as a substitute for the mortgaged estate, the lien of the junior mortgagee is transferred from the land to the surplus of the money arising from the sale." Restatement (Third) of Property: (Mortgages) § 7.4, Reporter's Note (internal quotation marks and citation omitted). *See also* 59A C.J.S. Mortgages § 1324 ("As a general rule, the lien of a junior encumbrance, extinguished by the foreclosure of a mortgage, is transferred in equity to the surplus foreclosure fund.") (footnotes and citations omitted). Mortgage liens and other interests terminated by a mortgage foreclosure sale "attach to the surplus in order of the priority they enjoyed prior to the foreclosure" and "[p]ayment of the surplus will be governed by that priority." Restatement (Third) of Property: (Mortgages) § 7.4 cmt. b.

[40] Indeed, Indiana caselaw also provides that a lien of a junior mortgagee is transferred or attached to the surplus proceeds from the sale under a senior mortgage foreclosure. In *Clapp v. Hadley*, 39 N.E. 504 (Ind. 1895), a mortgagee, who held a junior mortgage lien, and the mortgagor both sought distribution of the surplus that arose from a mortgage foreclosure sale under a senior mortgage lien. The *Clapp* Court concluded "that the [mortgagee's] junior lien was not extinguished, as against the [mortgagor], though it was required to surrender priority to the senior decree and purchase" and that the mortgagee was entitled to the surplus in an amount equal to the junior lien. *Clapp*, 39 N.E. at 505-06. The *Clapp* Court explained that, upon the junior lienholder surrendering priority to the senior lienholder, equity required that the junior lien attached to the surplus fund and that, for the enforcement of the lien, the fund was a substitute for the mortgaged property. *Id.* at 505. The Court clarified that "a junior mortgage [lienholder] [i]s entitled to participate in the surplus arising from the satisfaction of a senior mortgage" lien because the "lien [i]s . . . carried to the surplus when the property [is] taken out of the reach of the junior lien by applying it to the senior lien." *Id.* (citing *West v. Shryer*, 29 Ind. 624 (Ind. 1868)). Additionally, the *Clapp* Court concluded that "equity w[ould not] permit the debtor [or mortgagor] to take the [surplus] fund which [wa]s the result of property pledged to the security of a debt not satisfied, and, by reason of [the debtor's] insolvency and [the debtor's] adverse claim to said fund, deprive the creditor [or junior mortgagee] of all means of collecting the indebtedness." *Id.*

Thereafter, Indiana caselaw continued to follow the principle that junior mortgagees retain their rights to surplus proceeds when their liens are displaced by a senior foreclosure. *See Mueller*, 56 N.E. at 222 (Ind. 1900) (explaining that adjudged liens are extinguished in the property and transferred to the fund arising from the sale of the property and that the "superior rights and equities of creditors are to be preserved in the fund to the same extent that they existed in the property sold"); *Luken*, 84 N.E. at 565 (following the reasoning in *Clapp* and explaining that the surplus that resulted from the sale took the place of the land, and the mortgagee's mortgage lien was transferred to those surplus proceeds); *White v. Shirk*, 51 N.E. 126, 127-28 (Ind. Ct. App. 1898) (concluding that the reasoning in *Clapp* was "decisive" and explaining that the surplus proceeds "should have been applied to the next oldest lien"). Accordingly, ABS' lien, as a junior mortgagee in this proceeding, transferred or attached to the remaining sheriff sale proceeds from the sale.

[42] We now turn to a review of the statute at issue in this appeal. Sanders asserts that INDIANA CODE § 32-30-10-14 precluded ABS from a distribution of the remaining sheriff sale proceeds because the statute lacked any specific reference to the priority of a junior or second mortgagee's lien and did not include any provision that such a junior lien would attach to any sheriff sale proceeds upon a foreclosure sale of a senior or first mortgagee.

[43] We acknowledge that, in INDIANA CODE § 32-30-10-14, our legislature did not include an explicit reference to the disbursement of remaining sheriff sale proceeds to a junior lienholder following the sale on the foreclosure by a senior

lienholder or a provision regarding the attachment of a junior mortgagee lien to the sale proceeds. However, we are not surprised by the lack of such references in INDIANA CODE § 32-30-10-14 because our review of the statute reveals that the statute is applicable to what occurs after a sheriff sale, *i.e.*, the disposition or distribution of the sheriff sale proceeds. The statute is not applicable to what occurs before the sheriff sale, such as the trial court's determination of any lienholders' rights and the order of lien priority in the foreclosure proceeding. *See* 20 Ind. Law Encyc. Mortgages § 138 (citing *Quill*, 9 N.E. 99; *Luken*, 84 N.E. 561) (referencing the authority of a trial court in foreclosure proceeding); *Adair*, 16 N.E. at 604 ("[I]t has long been settled by the decisions in this state that conflicting claims and questions of priority may be determined in foreclosure suits, whenever proper issues to that end are tendered."). Thus, the trial court is guided by INDIANA CODE § 32-30-10-14 when ordering the disposition of the sheriff sale proceeds, but the statute does not control the trial court's determination of the validity of a mortgagee's lien or the order of priority among mortgagees' liens or other lienholders' liens.

[44] Once the trial court makes the relevant determination of any lienholders' rights and the order of lien priority, that determination will be applied to the distribution categories contained in INDIANA CODE § 32-30-10-14. The language of the statute sets forth the various distribution categories, and the statute sets out the order for distribution of the sheriff sale proceeds that are to be paid before there would be any possible surplus available to a "mortgage debtor" such as Sanders. *See* I.C. § 32-30-10-14. Indeed, one of the statutory

distribution categories includes "[t]he payment of the principal due, interest, and costs[.]" I.C. § 32-30-10-14 (2). While this subsection uses the word payment in the singular, "[i]t is a well-settled rule of statutory construction that words used in their singular include also their plural." *Gaddis v. McCullough*, 827 N.E.2d 66, 71 (Ind. Ct. App. 2005), *trans. denied*. Indeed, the legislature has codified this principle under the rules for statutory construction, explaining that "[w]ords importing the singular number only may be also applied to the plural of persons and things." I.C. § 1-1-4-1(3). Thus, the statutory disbursement category of INDIANA CODE § 32-30-10-14(2) for the payment of the principal, interest, and costs due would include payment to a mortgagee, such as ABS, who has had its rights adjudged in the foreclosure proceeding. *See* I.C. § 32-30-10-14 (2). *See also Edler*, 60 N.E.3d at 292.[5]

[45] We conclude that the trial court's Appealed Order complied with INDIANA CODE § 32-30-10-14 and that the trial court did not err by granting ABS' summary judgment motion and ordering for the remaining sheriff sale proceeds to be disbursed to ABS. Therefore, we affirm the trial court's judgment.[6]

---

[5] We note that the statute also does not include a specific provision, as set out in *Edler*, that a lienholder who does not have his rights adjudged in the foreclosure action will not have a right to share in the proceeds of the sale. However, our caselaw provides such guidance. *See Edler*, 60 N.E.3d at 292. The lack of such a provision in the statute does not mean that such a requirement does not exist or that we do not need to apply or follow applicable caselaw to our appellate review of the trial court's order.

[6] Lastly, we note that despite the fact that Sanders did not appeal the March 2023 Order and that the order is not before us on appeal, Sanders attempts to raise a challenge to the March 2023 Order. Sanders generally asserts that the March 2023 Order did not constitute a judgment for ABS because the trial court "did not make a determination consistent with the requirements of Trial Rule 58(B) that would have provided for an

[46]     Affirmed.


Weissmann, J., and Felix, J., concur.


ATTORNEYS FOR APPELLANT

Harley K. Means
Jason T. Mizzell
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

---

*in rem* judgment in [ABS'] favor" and that the trial court instead deferred the entry of judgment on [ABS']
claims for another day." (Sanders' Br. 14).

Indiana Trial Rule 58(B) sets forth elements that the trial court is required to include as the content of a
judgment:

> (1) A statement of the submission indicating whether the submission was to a jury or to the
> Court; whether the submission was upon default, motion, cross-claim, counterclaim or third-
> party complaint; and if the submission was to less than all issues or parties, such other matters
> as may be necessary to clearly state what issue is resolved or what party is bound by the
> judgment.
>
> (2) A statement of the appearances at the submission indicating whether the parties appeared in
> person, by counsel, or both; whether there was a failure to appear after notice; and whether the
> submission was conducted by telephone conference.
>
> (3) At the court's discretion and in such detail as it may deem appropriate, a statement of the
> court's jurisdiction over the parties and action and of the issues considered in sufficient
> particularity to enable any party affected by the judgment to raise in another action the defenses
> of merger, bar or claim or issue preclusion.
>
> (4) A statement in imperative form which clearly and concisely sets forth the relief granted, any
> alteration of status, any right declared, or any act to be done or not done.
>
> (5) The date of the judgment and the signature of the judge.

Ind. Trial Rule 58(B). "The form and content requirements of Trial Rule 58(B) are primarily related to the
management of court records as opposed to the validity of the judgment itself." *Paulson v. Centier Bank*, 704
N.E.2d 482, 488 (Ind. Ct. App. 1998), *reh'g denied*, *trans. denied*. Additionally, a trial court's failure to strictly
comply with the mandates of Trial Rule 58 is not grounds for voiding a judgment unless a party can
demonstrate prejudice to a substantial right caused by that failure. *See Henderson v. Sneath Oil Co.*, 638 N.E.2d
798, 803-04 (Ind. Ct. App. 1994).

Sanders does not specify how the March 2023 Order did not comply with the content elements of Rule 58(B).
Nor does she assert that the March 2023 Order or any alleged deficiency the requirements of Trial Rule 58(B)
prejudiced her or a substantial right. Moreover, Sanders did not appeal the March 2023 Order and cannot
now attempt to collaterally challenge it here. *See Carlson*, 895 N.E.2d at 1198.

ATTORNEYS FOR APPELLEE

Kurt V. Laker
Nathan A. Dewan
Doyle & Foutty, P.C.
Indianapolis, Indiana